**Earle A. PARTINGTON,**
**Plaintiff–Appellant,**

v.

**Joseph M. GEDAN; Howard T. Chang,**
**Defendants–Appellees.**

No. 87–2375.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1988.

Decided March 13, 1989.

Motion to Correct Opinion Granted in
Part and Denied in Part
April 6, 1989.

As Amended April 6, 1989.

As Amended on Denial of Reconsideration
July 12, 1989.

Earle A. Partington, Honolulu, Hawaii, for plaintiff-appellant.

Susan L. Gochros, Deputy Atty. Gen., Honolulu, Hawaii, for defendants-appellees.

Before WALLACE, REINHARDT and NOONAN, Circuit Judges.

WALLACE, Circuit Judge:

Attorney Partington filed suit pursuant to 42 U.S.C. § 1983 in the United States District Court, alleging that enforcement of Hawaii Supreme Court Rule 13 against him violated the first, fifth, sixth, and fourteenth amendments to the United States Constitution. He sought a declaratory judgment stating that Rule 13 violated these constitutional provisions and an injunction barring any further proceedings against him pursuant to Rule 13. The district court concluded that abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (*Younger*), was appropriate because Partington could raise these constitutional challenges in the ongoing Rule 13 proceedings. We have jurisdiction and affirm.

I

The Hawaii trial court appointed Partington as trial counsel for Clarke. The State had charged Clarke with brutally murdering the three-year-old daughter of his live-in girlfriend. Partington represented Clarke at trial. Clarke was convicted of murder and sentenced to life in prison.

Partington's appointment as counsel for Clarke continued on appeal. Clarke raised numerous contentions, but did not allege ineffective assistance of trial counsel.

During the pendency of the appeal, however, the state trial judge who presided at Clarke's trial complained to the Office of Disciplinary Counsel of the Hawaii Supreme Court about Partington's failure to make a closing argument at Clarke's trial. Following this complaint, Partington filed a motion with the Hawaii Supreme Court, on behalf of Clarke, requesting that the Supreme Court remand the appeal to the trial court to explore the trial judge's complaint. The motion was denied.

During oral argument before the Hawaii Supreme Court on Clarke's criminal appeal, some Justices *sua sponte* raised the issue of ineffective assistance of trial counsel. The Hawaii Supreme Court subsequently reversed Clarke's conviction. Without addressing the numerous arguments made in Clarke's brief, the court declared that Part-

ington rendered ineffective assistance during trial. The court based this conclusion on the following: (1) Partington refused to make an opening statement; (2) he refused to cross-examine the mother of the victim ostensibly because the State did not make certain records concerning the witness available to him; (3) he subsequently refused to call the mother after receiving the records; (4) he elicited testimony from two State witnesses that they believed Clarke was guilty; and (5) he refused to make a closing argument. The Hawaii Supreme Court's opinion concluded: "We remind both counsel of their obligations under [Hawaii Supreme Court Rule] 13 once a judgment on appeal has been issued by us in this case."

Hawaii Supreme Court Rule 13 [1] outlines proceedings that are to be brought against

1. Haw.Sup.Ct.R. 13 provides:
PROCEEDINGS FOLLOWING FINAL ADJUDICATION OF INEFFECTIVE ASSISTANCE OF COUNSEL IN CRIMINAL CASES.

Whenever the conviction of a criminal defendant has been overturned and a new trial ordered because of a finding that the defendant had ineffective assistance of counsel in the proceedings against him or her, and the order has become final, either because it was not appealed, or because it has been finally affirmed on appeal, it shall be the duty of the prosecutor and the counsel for the individual defendant each within five days of the finality of such order to file a certificate in the title of the cause with the Supreme Court of Hawaii noting that such an order has been entered and attaching a copy of that order to the certificate.

Within five days of the first receipt of such a certificate by the supreme court, the chief justice shall appoint a special master to determine whether action against the counsel alleged to have been incompetent is warranted.

Within five days from his appointment, the special master shall mail a notice of his appointment together with a copy of the order of his appointment, the certificate or certificates, and the order reversing the conviction to the respondent attorney at his last known address as shown in the records of the clerk of the Supreme Court of Hawaii.

Within 45 days from mailing, the respondent attorney shall file with the clerk of the supreme court an answer showing cause why corrective action as provided herein should not be taken by the supreme court. If the respondent attorney wishes to disqualify the special master, he shall file with his return a motion therefore supported by an affidavit made upon personal knowledge and showing

facts sufficient to establish the personal bias and prejudice of the special master toward him.

If a motion for disqualification is filed, the master shall rule on the same within five days from the date of filing. That ruling shall be appealable only after an order in the proceedings as hereinbelow set forth has been entered.

The master shall within five days after receipt of the answer of the respondent appoint an attorney to further prosecute the proceedings and shall give notice of the appointment to the respondent attorney in the same manner as provided above.

The respondent attorney may represent himself or may designate an attorney to represent himself. The respondent or his attorney and the attorney appointed by the master shall have 45 days from the appointment of the attorney by the master to conduct any discovery proceedings in accordance with the discovery chapter of the Hawaii Rules of Civil Procedure. On the expiration of the 45 days, the master shall set the matter for hearing within 30 days, take such evidence in accordance with the Hawaii Rules of Evidence as may be proffered by the parties, and within 10 days of the conclusion of the hearing, render a decision and an order either dismissing the proceedings or recommending corrective action against the respondent attorney.

Corrective action which may be recommended by the master and/or adjudicated by the supreme court may consist of any one or more of the following:

(1) Requiring the respondent attorney to take a prescribed course or courses of remedial education and to produce satisfactory evidence of his or her passing such courses;

defense counsel following the adjudication of his or her ineffective assistance in criminal cases. Under Rule 13, the Hawaii Supreme Court appoints a special master "to determine whether action against the counsel alleged to have been incompetent is warranted." Haw.Sup.Ct.R. 13. Within five days of this appointment, the special master notifies the defense counsel by mail. Within forty-five days of this mailing, the defense counsel must "file with the clerk of the supreme court an answer showing cause why corrective action as provided [in the Rule] should not be taken by the supreme court." *Id.* Within five days of receiving the defense attorney's answer, the special master must appoint an attorney to prosecute the proceedings. *Id.* The defense attorney and the special prosecutor then have forty-five days to conduct discovery. Within thirty days after the expiration of the discovery period, the special master holds a hearing. Within ten days after the conclusion of the hearing, the special master must render a decision and enter "an order either dismissing the proceedings or recommending corrective action against the respondent attorney." *Id.* Within twenty days of the special master's decision and proposed order, the defense attorney and the special prosecutor may file exceptions with the Hawaii Supreme Court. Within forty days of the special master's decision and proposed order, the Supreme Court must "enter an order either dismissing the proceedings or ordering corrective action in accordance with the guidelines set forth" in the Rule. *Id.*

In accordance with Rule 13, on February 3, 1986, the Hawaii Supreme Court appointed Gedan as the special master. On February 7, 1986, Gedan notified Partington that he had forty-five days to submit an answer "showing cause why corrective action as provided for in Rule 13 should not be taken by the Supreme Court." On March 27, 1986, Partington filed an answer in accordance with the Rule. Without waiving any constitutional challenges, Partington's answer stated that he based all of his trial decisions on certain tactics, but that he could not explain his tactical choices because his client at trial, Clarke, refused to waive the attorney-client privilege.

Gedan did not appoint a special prosecutor within five days of receiving the answer as provided in Rule 13; however, on August 13, 1986, Gedan appointed Chang as the special prosecutor. Notwithstanding the time schedule set forth in Rule 13, the record does not reflect that the parties engaged in discovery during the forty-five day period as provided in the Rule or that the special master set the matter for a hearing within thirty days of the close of the discovery period.

On March 9, 1987, Partington filed a complaint under 42 U.S.C. § 1983 in the United States District Court for the District of Hawaii, naming Gedan and Chang as defendants. He alleged that the conduct of Gedan and Chang pursuant to Rule 13 deprived and continue to deprive him of rights under the free speech clause of the first amendment, the due process clause of the fifth and fourteenth amendments, the right to counsel clause of the sixth amendment, and the equal protection clause of the fourteenth amendment. The complaint sought (1) an injunction prohibiting Gedan and Chang from proceeding against Partington pursuant to Rule 13, (2) a declarato-

---

(2) Suspending the respondent's license to practice law until (1) has been complied with.

(3) In cases where the master finds that ineffective assistance of counsel may have resulted from a violation of DR 6–101 to DR 7–101, the master shall, in addition to (1) and (2), refer the matter to the Office of Disciplinary Counsel for investigation under Rule 2 of these rules. In the event of a reference under this subparagraph, the master's finding and the reference shall be deemed confidential and shall not be disclosed except pursuant to the provisions of Rule 2.22 of these rules.

Within 20 days from the rendering of the master's decision and proposed order, respondent or his attorney and the attorney appointed by the master to prosecute the proceedings may file exceptions with the Supreme Court of Hawaii supported by a memorandum in support thereof.

Within 40 days of the rendering of the decision and proposed order by the master, the supreme court shall enter an order either dismissing the proceedings or ordering corrective action in accordance with the guidelines set forth above.

ry judgment that Rule 13 as applied to Partington is unconstitutional, and (3) attorney's fees, costs, and expenses for the action. Partington also sought damages for attorney's fees and costs arising out of the Rule 13 proceeding, but later abandoned this claim. On March 30, 1987, Gedan and Chang moved to dismiss the complaint, arguing that the district court should abstain. They asserted that Partington could raise all of his constitutional claims in the Rule 13 hearing, which was scheduled to commence on April 14, 1987. The Rule 13 hearing was not held that day because Gedan stayed the hearing on Partington's request. On April 22, Partington filed a motion for summary judgment. On May 12, the Hawaii Association of Criminal Defense Lawyers (Defense Lawyers) lodged a brief in the district court on behalf of Partington as amicus curiae.

On July 1, 1987, the district court granted the Defense Lawyers' motion to file the amicus brief, granted the motion of Gedan and Chang to dismiss the complaint, and denied Partington's motion for summary judgment. The district court concluded that *Younger* abstention, as interpreted and applied in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed. 2d 116 (1982) (*Middlesex*), should be applied. After the district court entered its judgment, Partington filed a timely notice of appeal, challenging the dismissal of the complaint.

## II

■ Ordinarily, the dismissal of a complaint without the dismissal of the underlying action is not considered an appealable final order under 28 U.S.C. § 1291. *See Allen v. Veterans Administration*, 749 F.2d 1386, 1388 (9th Cir.1984); *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984) (*Hoohuli*). Here, the district judge abstained, but maintained jurisdiction over the cause by virtue of his failure to dismiss the underlying action. This procedure, if allowed, would grant the state permission to proceed first but allow the parties to maintain a federal court pres-

ence, if needed, after the state has finalized its assessment of the issues presented. *See Crane v. Fauver*, 762 F.2d 325, 328–29 (3d Cir.1985). We have jurisdiction over this interlocutory appeal, however, because of the denial of Partington's request for an injunction preventing Gedan and Chang from proceeding against him pursuant to Rule 13. *See* 28 U.S.C. § 1292(a)(1); *Sea Ranch Association v. California Coastal Zone Conservation Commission*, 537 F.2d 1058, 1061 (9th Cir.1976).

■ There is another reason why we may accept jurisdiction over this appeal. We have held that where *Younger* abstention is applicable, "a district court must dismiss the action." *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1081 (9th Cir.1987) (*World Famous Drinking Emporium*), quoting *Fresh International Corp. v. Agricultural Labor Relations Board*, 805 F.2d 1353, 1356 (9th Cir.1986). Because the district judge was required to dismiss the action, we may assume he intended to do so and treat the dismissal of the complaint as a dismissal of the action. *See Hoohuli*, 741 F.2d at 1171 n. 1.

■ That brings us to our standard of review. When the district court, pursuant to the authority of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), abstains from addressing the constitutionality of a state statute because state court proceedings interpreting the statute are still pending, we review its abstention for an abuse of discretion. *C–Y Development Co. v. Redlands*, 703 F.2d 375, 377 (9th Cir.1983). But when, as here, the district court abstains on the basis of *Younger*, which forbids federal courts from enjoining pending certain categories of state proceedings except in extraordinary circumstances, we review its abstention de novo. *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 468 (9th Cir.1984) (*Goldie's Bookstore*). This de novo review is applied even though we are reviewing the action of the district court in granting or denying an injunction. *See id.*

## III

■ Although abstention is the exception, not the rule, *see World Famous Drinking Emporium,* 820 F.2d at 1082, *Younger* and its companion cases generally require a federal district court to abstain from granting injunctive relief when state criminal actions or certain categories of state civil or administrative proceedings are pending against the federal plaintiff at the time he or she commences the federal action. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1522, 95 L.Ed.2d 1 (1987) (*Pennzoil*) (injunctive relief against a prevailing civil litigant attempting to execute a judgment in its favor pending appeal of that judgment to a state appellate court); *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 625, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986) (*Dayton Schools*) (injunctive relief against administrative proceedings conducted by state civil rights commission); *Middlesex,* 457 U.S. at 428–29, 102 S.Ct. at 2519 (injunctive relief against state bar disciplinary proceedings); *Moore v. Sims,* 442 U.S. 415, 423, 433–35, 99 S.Ct. 2371, 2377, 2382–83, 60 L.Ed.2d 994 (1979) (*Moore*) (injunctive relief against state proceeding seeking to protect allegedly abused children); *Trainor v. Hernandez,* 431 U.S. 434, 435–38, 97 S.Ct. 1911, 1913–15, 52 L.Ed.2d 486 (1977) (*Trainor*) (injunctive relief against a state civil attachment/enforcement proceedings); *Juidice v. Vail,* 430 U.S. 327, 333–36, 97 S.Ct. 1211, 1216–17, 51 L.Ed.2d 376 (1977) (*Juidice*) (injunctive relief against state contempt proceedings); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–07, 95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482 (1975) (*Huffman*) (injunctive relief against state civil proceedings seeking abatement of a nuisance); *Younger,* 401 U.S. at 49–53, 91 S.Ct. at 753–55 (injunctive relief against state criminal proceedings). The *Younger* abstention doctrine is based on considerations of equity, comity, and federalism. *See, e.g., Pennzoil,* 107 S.Ct. at 1525–26; *Younger,* 401 U.S. at 43–45, 91 S.Ct. at 750–51.

## A.

■ In applying the *Younger* doctrine, federal courts must examine (1) the nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings. *See Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521; *World Famous Drinking Emporium,* 820 F.2d at 1081, 1082. Courts must also examine whether the proceeding demonstrates "bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate." *Middlesex,* 457 U.S. at 435, 102 S.Ct. at 2522. But where a state tribunal has been found incompetent by reason of bias, the Supreme Court has held that there was effectively no opportunity to litigate constitutional claims. *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed. 2d 488 (1973) (*Gibson*); *compare Kugler v. Helfant,* 421 U.S. 117, 124–25 & n. 4, 95 S.Ct. 1524, 1530–31 & n. 4, 44 L.Ed.2d 15 (1975) (dictum agreeing that a biased state tribunal removes predicate for *Younger v. Harris* dismissal, but categorizing biased tribunal in *Gibson* as example of "extraordinary circumstance" rendering state tribunal incapable of fairly and fully adjudicating issues before it).

### 1.

■ *Younger* by its own terms requires federal courts to abstain from interfering in state criminal proceedings absent exceptional circumstances. *See* 401 U.S. at 53–54, 91 S.Ct. at 754–55. The Supreme Court, however, has never held that federal district courts should always abstain under *Younger* when state civil proceedings are pending. *See Moore,* 442 U.S. at 423 n. 8, 99 S.Ct. at 2377 n. 8; *Huffman,* 420 U.S. at 607, 95 S.Ct. at 1209. Nonetheless, the Court has held that, under *Younger,* federal courts should abstain from interfering with state disciplinary proceedings analogous to the Rule 13 proceeding currently pending against Partington. *See Middle-*

*sex,* 457 U.S. 423, 102 S.Ct. 2515. In *Middlesex,* the Middlesex County Ethics Committee, a tribunal under the jurisdiction of the New Jersey Supreme Court, charged Hinds, a member of the New Jersey Bar, with violating two New Jersey disciplinary rules. *Id.* at 425–28, 102 S.Ct. at 2518–19. Rather than filing an answer to the charges as provided in the New Jersey Bar disciplinary procedures, Hinds filed suit in federal district court, alleging that the disciplinary rules violated his first amendment rights and were facially vague and overbroad. *Id.* at 429, 102 S.Ct. at 2519. The district court abstained under *Younger,* but was reversed by the Third Circuit. *Id.* at 429, 102 S.Ct. at 2519.

Recognizing that "[t]he policies underlying *Younger* are fully applicable to non-criminal judicial proceedings when important state interests are involved," the Supreme Court proceeded to review the New Jersey State Bar disciplinary proceedings in light of the three requirements for abstention under *Younger. Id.* at 432, 102 S.Ct. at 2521. First, observing that the local Ethics Committees acted as an arm of the New Jersey Supreme Court, the Court determined that "[f]rom the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee." *Id.* at 433–34, 102 S.Ct. at 2522. Significant to the Court's determination that the state disciplinary proceedings were "judicial" in nature was its analogizing of the role local ethics or bar associations to that of a special master. *Id.* at 434 n. 13, 102 S.Ct. at 2522 n. 13. Next, the Court acknowledged that the state "has an *extremely important* interest in maintaining and assuring the professional conduct of the attorneys it licenses," especially "the professional conduct of attorneys involved in the administration of *criminal* justice." *Id.* at 434, 102 S.Ct. at 2522 (emphasis added). Last, the Court opined that because Hinds "failed even to *attempt* to raise any federal constitutional challenge in the state proceedings," he had not shown that "the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules

which they were enforcing violated federal constitutional guarantees." *Id.* at 435, 102 S.Ct. at 2522 (emphasis in original). Having concluded that the three prerequisites for *Younger* abstention were satisfied, the Court reversed the Third Circuit, holding that it was proper for the district court to have stayed its hand in this case. *See id.* at 437, 102 S.Ct. at 2524.

The Rule 13 disciplinary proceeding initiated against Partington in Hawaii is strikingly similar to the New Jersey disciplinary proceedings at issue in *Middlesex.* Both proceedings are conducted by an ethics committee or its analogue, a special master, *id.* at 434 n. 13, 102 S.Ct. at 2522 n. 13, under the auspices of the state supreme court. *Compare* 457 U.S. at 425–27, 433, 102 S.Ct. at 2518–19, 2522 *with* Haw.S.Ct. R. 13. Just as the Court in *Middlesex* concluded that the State of New Jersey had a "special" interest "in the professional conduct of attorneys involved in the administration of criminal justice," 457 U.S. at 434, 102 S.Ct. at 2522, we conclude that Hawaii has a vital interest in ensuring that defense counsel in criminal cases perform within the standards of reasonable professional competence. Partington concedes, as he must, that the State of Hawaii has a very important interest in its Rule 13 proceedings. Thus, the first requirement for *Younger* abstention has been met. In addition, there is no question that the Rule 13 proceedings had begun and were still pending at the time Partington filed suit in the district court. Partington concedes this point as well. Thus, the second requirement for *Younger* abstention has been met. Unless Partington can show that, unlike the New Jersey state disciplinary proceedings discussed in *Middlesex,* the Rule 13 proceedings against him do not offer him an opportunity to raise his constitutional claims and have them timely decided by a competent state tribunal, *see Middlesex,* 457 U.S. at 437, 102 S.Ct. at 2524; *Gibson,* 411 U.S. at 577, 93 S.Ct. at 1695, or that this proceeding demonstrates "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate," *Middlesex,* 457

U.S. at 435, 437, 102 S.Ct. at 2522, 2524, *Middlesex* governs and we must, accordingly, affirm the dismissal of this action under *Younger.*

### 2.

Under the third prong of the test for *Younger* abstention, federal abstention is inappropriate unless the plaintiff is afforded the opportunity in the ongoing state proceedings to raise his constitutional claims "and have [those claims] timely decided by a competent state tribunal." *Gibson,* 411 U.S. at 577, 93 S.Ct. at 1697; *accord Middlesex,* 457 U.S. at 437, 102 S.Ct. at 2524. Partington strenuously advances two grounds why the Rule 13 proceedings against him fail to meet this third required predicate for *Younger* abstention.

First, he maintains that the attorney-client privilege procedurally bars him from disputing the Hawaii Supreme Court's finding of ineffectiveness of counsel, thereby depriving him of an opportunity to raise his federal constitutional claims during his Rule 13 proceedings. If a federal plaintiff cannot raise his federal claim in the state proceedings because state procedures do not afford him the opportunity to do so, then abstention is not appropriate. *See, e.g., Gerstein v. Pugh,* 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975). Partington argues that abstention is inappropriate here because Clarke's refusal to waive the attorney-client privilege

disables him from contesting the ineffectiveness of counsel issue in either the Rule 13 proceedings or in the Hawaii Supreme Court. Partington believes that the "self-defense" exception to the attorney-client privilege, *see* Disciplinary Rule 4–101(C)(4),[2] only applies when the client questions the attorney's conduct. Clarke has not done so. We interpret this argument to mean that Partington believes Hawaii's interpretation of the attorney-client privilege imposes a procedural bar that effectively prevents him from testifying on the issue of ineffectiveness because he cannot fully present his trial strategy defense.

Partington bears the burden of showing "'that state procedural law bar[s] presentation of [his] claims.'" *Pennzoil,* 107 S.Ct. at 1528, *quoting Moore,* 442 U.S. at 432, 99 S.Ct. at 2381. Asserted ambiguities in Hawaii's rule regarding the attorney-client privilege or on the procedures available in Rule 13 proceedings for the presentation of his federal claims do not relieve him of this burden. Federal courts "cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." *Pennzoil,* 107 S.Ct. at 1528. Moreover, given that Partington "has not attempted to present his federal claims in related state court proceedings, [we will] assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.; see also Middlesex,* 457 U.S. at 435, 102 S.Ct. at 2522. In addition,

---

**2.** Disciplinary Rules, DR 4–101, *Preservation of Confidences and Secrets of a Client,* provides:

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:

(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4–101(C) through an employee.

even if a federal plaintiff cannot raise his constitutional claims in state administrative proceedings that implicate important state interests, his ability to raise the claims via state judicial review of the administrative proceedings suffices. *Dayton Schools*, 477 U.S. at 629, 106 S.Ct. at 2724. Requiring a federal plaintiff to present his constitutional challenges in the state proceedings recognizes that state courts can and will perform their responsibility to safeguard federal constitutional rights. *See, e.g., Pennzoil*, 107 S.Ct. at 1528; *Middlesex*, 457 U.S. at 431, 102 S.Ct. at 2520; *Trainor*, 431 U.S. at 443, 97 S.Ct. at 1917.

Partington has not met his burden. He does not explain how this alleged procedural bar prevents him from presenting his first, fifth, sixth, and fourteenth amendment claims in the Rule 13 proceedings. Nor has Partington unambiguously shown that Hawaii's "self-defense exception" to the attorney-client privilege, *see* DR 4–101(C)(4), *only* applies when a client attacks his attorney's conduct. *Cf.* ABA/BNA Lawyer's Manual on Professional Conduct, *Disclosure: Attorney's Benefit*, at 55:701, 703, 706–08(BNA) (Nov. 11, 1987) (discussing cases where the privilege does not apply even though the client is not attacking the attorney's conduct). In any event, Partington "should first set up and rely upon [this procedural] defense in the [Hawaii] state courts." *Younger*, 401 U.S. at 45, 91 S.Ct. at 751, *quoting Fenner v. Boykin*, 271 U.S. 240, 244, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926). We cannot assume that Hawaii will interpret its attorney-client privilege to bar Partington from speaking in his own defense. *Pennzoil*, 107 S.Ct. at 1528.

 Second, Partington argues that the third prong for abstention is not met in this case because both the special master and the Hawaii Supreme Court are biased against him. In *Gibson*, the Supreme Court recognized that if the federal plaintiff can establish that either the state administrative tribunal or the state court is not "competent" because of bias, then abstention is not appropriate. *See* 411 U.S. at 577, 93 S.Ct. at 1697. In addition, it recog-

nized that de novo judicial review on the decision of a "biased" administrative board does not satisfy the competent tribunal requirement of the third predicate for *Younger* abstention. *See id.* & n. 16. Here, Partington contends that a finding in the Rule 13 proceeding before the special master or the Hawaii Supreme Court that he rendered effective assistance of counsel would be totally incompatible with the Hawaii Supreme Court's decision in *State v. Clarke.* From this, he concludes that the issue of ineffectiveness has been prejudged against him. Partington further assails the impartiality of the Hawaii Supreme Court by asserting that the large amount of publicity that *State v. Clarke* generated has biased the Hawaii Supreme Court against his case.

In claiming bias, Partington must overcome the presumption that the special master and the Hawaii Supreme Court are unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1669, 72 L.Ed. 2d 1 (1982). He can rebut this presumption "by a showing of conflict of interest or some other specific reason for disqualification." *Id.*

In support of his claim of judicial bias, Partington relies on *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (*Withrow*). The Court there examined a Wisconsin statute that allowed a state medical examining board to warn and reprimand a physician, to suspend a physician's license temporarily, or to institute a criminal action or an action to revoke a license when it found probable cause under governing criminal or revocation statutes. *Id.* at 37, 95 S.Ct. at 1459. When the medical examining board commenced investigative proceedings against Larkin, Larkin filed suit in federal court under 42 U.S.C. § 1983 seeking an injunction against the investigation, which was initially denied by the federal district court. *Id.* at 39, 95 S.Ct. at 1460. The board subsequently notified Larkin that it would hold a "contested hearing" in order to determine whether to suspend his license temporarily. *Id.* at 40–41, 95 S.Ct. at 1461. The federal district court then enjoined the board because it concluded that by authorizing the board

to perform a dual investigatory and adjudicative function, the Wisconsin statute raised serious procedural due process concerns by permitting a physician to lose his liberty or property at the hands of a biased decisionmaker. *Id.* at 41–42, 95 S.Ct. at 1462.

The Supreme Court reversed the preliminary injunction, concluding that it was "quite unlikely" that the physician would ultimately prevail on his procedural due process challenge. *Id.* at 46, 95 S.Ct. at 1464. Recognizing that biased decisionmakers do not satisfy procedural due process, *id.* at 46–47, 95 S.Ct. at 1464, the Court nonetheless rejected the contention "that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication." *Id.* at 47, 95 S.Ct. at 1464. Instead, the Court emphasized that one who advances such an argument

> must overcome a presumption of honesty and integrity in those serving as adjudicators; and [he] must convince [the court] that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* In repudiating the appellant's claim of presumptive bias, the Court observed that when an appellate court reverses an administrative law judge or a lower court judge, procedural due process does not mandate that a new judge retry the case. *Id.* at 48–49, 95 S.Ct. at 1465. Similarly, the Court rejected the proposition that simply because the board issued written findings of fact and conclusions of law in support of · its probable cause determination, the board had prejudged the case. *Id.* at 56–57, 95

S.Ct. at 1469. The Court pointed out that an initial finding of probable cause to believe a physician had violated a statute was not logically inconsistent with a subsequent decision, based on complete evidence brought out at an adversarial hearing, that the physician did not violate the statute. *Id.* at 57–58, 95 S.Ct. at 1469–70.

Partington argues that *Withrow* stands for the proposition that bias is established where the accusatory finding is incompatible with any adjudicative finding. He relies on the statement from *Withrow* that "if the initial view of the facts based on the evidence derived from nonadversarial processes as a *practical* or *legal* matter foreclose[s] fair and effective consideration at a subsequent adversary hearing leading to ultimate decision, a substantial due process question would be raised." *Id.* at 58, 95 S.Ct. at 1470 (emphasis added). From this interpretation of *Withrow,* Partington then argues that the following three factors all indicate that he is legally foreclosed from contesting the Hawaii Supreme Court's finding of ineffectiveness of counsel in *State v. Clarke:* (1) the title of Rule 13, "Proceedings Following Final Adjudication Of Ineffective Assistance Of Counsel In Criminal Cases," indicates that the decision is final; (2) the text of Rule 13, in part, speaks only of the special master determining whether "corrective action" should be taken; and (3) the Hawaii Supreme Court's order appointing the special master states that there was "a finding of ineffective assistance of trial counsel."

Under the third prong of *Younger,* Partington must demonstrate that he would not have an adequate opportunity to litigate his federal constitutional claims—in this case, as he argues, before a competent and unbiased state adjudicator. *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521; *Gibson,* 411 U.S. at 577, 93 S.Ct. at 1697.[3] He has not

---

3. The dissent suggests that we have misunderstood the third prong of the *Middlesex* test, the prong requiring that federal claimants have "an adequate opportunity in the state proceedings to raise constitutional challenges." 457 U.S. at 432, 102 S.Ct. at 2521. It is true that in neither *Middlesex* nor *Younger* is a biased tribunal mentioned under this third prong. The majority

and the dissent agree that *Younger* abstention is inappropriate when bias renders a state tribunal incompetent; we disagree over how to categorize the Supreme Court's decision in *Gibson.* *Gibson* analyzed incompetency caused by bias in connection with the plaintiff's opportunity to litigate federal constitutional claims before a competent state tribunal. 411 U.S. at 577, 93

done so. The Hawaii Supreme Court has never had the opportunity to hear Partington's argument that due process requires that he not be judged by the court after it has ruled on his performance in the criminal case. There is neither legal nor practical reason to believe that the Hawaii Supreme Court will be biased on this issue which it has never addressed. We cannot and should not guess how the court will respond. *Withrow* is irrelevant to Partington's unaddressed due process claims.

Moreover, we conclude that Partington has not demonstrated under *Withrow* that, as a practical or legal matter, the special master or the Hawaii Supreme Court is bound by *State v. Clarke* or has prejudged the ineffectiveness issue. *Cf. Vanelli v. Reynolds School District No. 7*, 667 F.2d 773, 779 & n. 10 (9th Cir.1982) (rejecting claim that a school board could not, consistent with due process, conduct an impartial hearing to review its prior decision to terminate a teacher's employment). As for the legal issue, the title of Rule 13 is somewhat troubling in that it may indicate that the finding of ineffectiveness is conclusive. Furthermore, the Rule itself is not clear on the issue of whether defense counsel can contest the issue of ineffectiveness anew before the special master and the Hawaii Supreme Court, and the Chief Justice's order appointing Gedan can be read as indicating that the Supreme Court has already decided the ineffectiveness issue. But, as we have already observed, Partington bears the burden of demonstrating, through "unambiguous authority," that both the special master and the Hawaii Supreme Court are precluded from considering the ineffectiveness issue de novo. *See Pennzoil*, 107 S.Ct. at 1528; *Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2522. We do not believe that Partington has carried this burden by reciting the foregoing factors. Rule 13 states in its second paragraph that defense counsel is only *"alleged*

to have been incompetent.'' (Emphasis added.) The special master, moreover, has the power to dismiss the proceedings. This power presumably includes the power to conclude that the criminal defense attorney did not in fact render ineffective assistance.

The Hawaii Supreme Court's initial determination of ineffectiveness will apparently not have collateral estoppel effect in the Rule 13 proceedings. *See Santos v. State Department of Transportation*, 64 Haw. 648, 652, 646 P.2d 962, 965–66 (1982) (per curiam) (discussing issue preclusion under Hawaii law). This conclusion is consistent with a letter written by the Chief Justice to Partington and others stating that Rule 13 provides "a procedure where the attorney in question ha[s] an opportunity to contest, on his own behalf, the charge of ineffective assistance of counsel, before an impartial master, who is in no way bound by the previous determination in the criminal case.'' If the attorney disagrees, the Rule "provides for the master's determination to be reviewed by the Supreme Court.'' In *Middlesex*, the Court considered the actions of the New Jersey Supreme Court clarifying Hinds's ability to raise his constitutional challenges. 457 U.S. at 436, 102 S.Ct. at 2523. Although the Hawaii Supreme Court has not formally spoken on this issue, we believe that, in the absence of clear authority to the contrary, the letter of the Chief Justice can be considered as an interpretive gloss for purposes of abstention clarifying that, as a legal matter, Partington will be able to contest the finding of ineffectiveness during his Rule 13 proceedings. In addition, the primary issue before the special master and, perhaps ultimately, the Hawaii Supreme Court, is whether corrective action is warranted under Rule 13. Partington does not contend that the court has prejudged this issue.[4]

---

S.Ct. at 1697. The dissent, however, focuses on dictum in *Kugler v. Helfant* categorizing the biased tribunal finding in *Gibson* as an "extraordinary circumstance." 421 U.S. at 124–25 & n. 4, 95 S.Ct. at 1530–31 & n. 4. Despite this dictum, we believe it better to follow *Gibson*'s approach of analyzing bias in connection with

whether there is an opportunity to litigate the federal constitutional claims, which became the third *Middlesex* prong.

**4.** Relying on *Gibson*, the dissent suggests that the majority has misconceived "the basic rule governing abstention and biased state tribunals"

We also find no practical limitation on Partington's ability to address any of his arguments to an impartial tribunal. To the extent that Partington believes that certain members of the Supreme Court may be personally biased against him, either by virtue of their finding of ineffectiveness of counsel in *State v. Clarke* or as a result of the high profile nature of the publicity in that case, he may be able to file an affidavit seeking recusal under Haw.Rev.Stat. § 601–7(b) (1985).[5] *Cf. Flangas v. State Bar of Nevada*, 655 F.2d 946, 950 (9th Cir.1981) (holding that this court cannot ascertain the availability of the biased adjudicator exception to *Younger* abstention until appellant attempts to avail himself of state statutory procedures to disqualify allegedly biased supreme court justices). Hawaii provides that Hawaii circuit judges and retired Supreme Court Justices may sit on the Hawaii Supreme Court when one of the Justices recuses himself. *See* Haw. Rev.Stat. § 602–10 (1985).[6] The statute even contemplates that some cases may arise in which all five Supreme Court Jus-

(dissent at p. 137) because we require inquiry of a biased state tribunal whether it is biased. Dissent at pp. 137–38. While we do not disagree with the legal premise, the dissent overlooks that there has been no finding that the Supreme Court of Hawaii is biased on the constitutional issues.

But more important, *Gibson* is distinguishable from the instant case. The state tribunal in *Gibson* was the Alabama Board of Optometry, "the statutory body with authority to issue, suspend, and revoke licenses for the practice of optometry." 411 U.S. at 567, 93 S.Ct. at 1692. This Board was comprised solely of practicing optometrists. *Id.* at 571, 93 S.Ct. at 1694. Of course, a tribunal comprised of optometrists does not have the ability to entertain constitutional claims. Optometrists are incompetent in this area; their domain is the visual process, not due process. By contrast, the state tribunal in *Partington* is a court, indeed, the Hawaii Supreme Court. It is comprised of experienced jurists. That this court has the ability to entertain and resolve constitutional claims is incontrovertible. There is simply no comparison between State Supreme Court justices and a group of optometrists in their competency to face constitutional issues: Justices are competent, optometrists are not. Partington has failed to demonstrate that he will not be afforded the opportunity to litigate his constitutional claims before a competent state tribunal. The third prong of *Middlesex* requires us to abstain. Contrary to the dissent's assertion, *Gibson* does not dictate a different result.

5. Haw.Rev.Stat. § 601–7 provides:

(a) No person shall sit as a judge in any case in which the judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, any pecuniary interest; nor shall any person sit as a judge in any case in which the judge has been of counsel or on an appeal from any decision or judgment rendered by the judge.

(b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.

6. Haw.Rev.Stat. § 602–10 provides:

Parties shall be entitled to bring an appeal before a full court. Oral argument shall be before a full court; provided that in an appropriate case the court in its discretion may dispense with oral argument. In case of a vacancy, or if a justice of the supreme court is disqualified from sitting in any case pending before the supreme court, or is unable to attend, or is absent, or is recused or has been excused, the vacancy or the place of such justice may be temporarily filled by a circuit judge designated by the chief justice or by the appointment of a justice who has retired from the supreme court. Such retired justice chosen to serve as substitute justice shall not be actively engaged in the practice of law. A retired justice, when sitting as substitute justice, shall be compensated at a rate of pay of associate justices of the supreme court. When necessary, the court may consist of five circuit judges, so designated or five retired justices so appointed or any combination of circuit judges and retired justices. After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice.

tices would recuse themselves, *id.* Moreover, we must presume that each Hawaii Supreme Court Justice will follow his duty under Haw.Sup.Ct.R. 5 to "be unswayed by partisan interests, public clamor, or fear of criticism," Haw.Sup.Ct.R. 5, *incorporating* Code of Judicial Conduct, Canon 3(A)(1), and to recuse himself if "he has a personal bias or prejudice concerning a party." Haw. Sup.Ct.R. 5, *incorporating* Code of Judicial Conduct, Canon 3(C)(1)(a). Partington has provided no reason to strip these individuals of the "presumption of honesty and integrity." *See Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464.[7]

### B.

■ Even if the necessary three predicates exist, however, *Younger* abstention will not be appropriate if the federal plaintiff can establish (1) that the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) that some other "extraordinary circumstances" exist, such as proceedings pursuant to a "flagrantly" unconstitutional statute. *See, e.g., Younger,* 401 U.S. at 49–50, 53–54, 91 S.Ct. at 753, 754–55.

### 1.

The scope of *Younger*'s bad faith exception is not clear. Although the Court in *Younger* and its progeny has continuously recognized that abstention would not be required if a federal plaintiff could establish that the state court proceedings were instituted in bad faith, the Court has never actually applied the exception. Federal circuit courts, however, have occasionally found the "bad faith" exception applicable. *See, e.g., Rowe v. Griffin,* 676 F.2d 524, 525–26 (11th Cir.1982); *Heimbach v. Lyons,* 597 F.2d 344, 346–47 (2d Cir.1979) (per curiam); *Wilson v. Thompson,* 593 F.2d 1375, 1381–83 (5th Cir.1979). No bad faith has been demonstrated in this case.

### 2.

Because "[t]he very nature of 'extraordinary circumstances' ... makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings," *see Kugler v. Helfant,* 421 U.S. 117, 124–25, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975), the scope of *Younger*'s "exceptional circumstances" exception is also unclear. As with the bad faith exception, the Supreme Court has consistently recognized the exception, but has never held that the exception applied.

The exception clearly recognizes, however, that a federal court need not abstain when faced with a flagrantly unconstitutional statute. *See Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55. This aspect of the exception applies only when a statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " *Id., quoting Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941) *(Watson );* accord *Trainor,* 431 U.S. at 446–47, 97 S.Ct. at 1919.

Partington argues that Rule 13 flagrantly violates the first amendment, procedural due process, and the equal protection clause of the fourteenth amendment on its face and as applied. We have examined the arguments that Partington makes in challenging Rule 13. He has certainly raised some colorable constitutional arguments. Nonetheless, he has failed to demonstrate that Rule 13 is " 'patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55, *quoting Watson,* 313 U.S. at 402, 61 S.Ct. at 967. Therefore, we reject Partington's argument that this ex-

---

**7.** The dissent draws attention to language in the Chief Justice's April 27, 1987, letter to Partington which, the dissent suggests, indicates that the Chief Justice has prejudged Partington's due process and equal protection claims. Dissent at p. 138 n. 8 & p. 144 n. 24. The Chief Justice is at liberty to recuse himself if his impartiality or the appearance of judicial objectivity is drawn into question.

ception prevented the district court from abstaining.

## IV

 Partington also contends that the Hawaii Supreme Court's decision in *State v. Clarke* (1) violated the first amendment because the decision had a chilling effect on his ability to hold himself out as a competent counsel, (2) violated the fifth and fourteenth amendment because the decision deprived him of a liberty and property interest in his reputation without due process of law, and (3) violated the sixth amendment which he argues "necessarily includes a corresponding right of a criminal defense attorney to practice his profession without unreasonable hindrances." Partington believes that both the fifth amendment and the sixth amendment require courts to grant a "pre-deprivation" hearing to all defense counsel alleged to have rendered ineffective assistance and that the Hawaii Supreme Court, in deciding *State v. Clarke*, did not comply with these constitutional requirements. Partington argues that the special master lacks the power to analyze these issues or to undo these constitutional harms and that it is unreasonable to believe that the Hawaii Supreme Court will analyze these issues or undo these harms; therefore, abstention is not appropriate. Accordingly, Partington requests a declaratory judgment stating that in rendering its decision in *State v. Clarke* and concluding that Partington rendered ineffective assistance of counsel, the Hawaii Supreme Court violated the first, fifth, and sixth amendments.

The district court did not expressly address any of these arguments or the requested declaratory relief regarding the Hawaii Supreme Court's decision in *State v. Clarke*. At oral argument, we expressed doubt whether Partington presented these constitutional challenges in the district court concerning the manner and the effect of the Hawaii Supreme Court's decision in *State v. Clarke*. We pointed out that the prayer for relief in Partington's complaint did not request a declaratory judgment that in rendering its decision

in *State v. Clarke* the Hawaii Supreme Court violated the first, fifth, and sixth amendments. Rather, the complaint states that because of the defendants' action he "is entitled to . . . [a] declaratory judgment that HSCR 13 as applied to Plaintiff is unconstitutional." At oral argument, Partington contended that his request for declaratory relief in the context of Rule 13 included the first, fifth, and sixth amendment challenges to the Hawaii Supreme Court's decision in *State v. Clarke*. He claims that he couched his request for relief in terms of Rule 13 because the Hawaii Supreme Court's decision in *State v. Clarke* was the "first step" under Rule 13. He argued that even if his complaint was not totally clear on the requested relief, his brief in the district court made his argument concerning the Hawaii Supreme Court's decision in *State v. Clarke* clear.

Gedan and Chang denied that Partington had presented this challenge in the district court. They contend not only that it would be inappropriate to allow Partington to bypass the district court, but also that such an attack on *State v. Clarke* implicates the *Rooker-Feldman* doctrine forbidding lower federal courts to sit in direct review of state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86, 103 S.Ct. 1303, 1314–16, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *see also MacKay v. Pfeil*, 827 F.2d 540, 543–45 (9th Cir.1987) (per curiam); *Worldwide Church of God v. McNair*, 805 F.2d 888, 890–93 (9th Cir.1986) (*Worldwide Church of God*).

We have reviewed Partington's complaint and the brief he submitted to the district court. Although we might be able to read Partington's rather unclear brief as contesting the constitutionality of the Hawaii Supreme Court's decisionmaking process in *State v. Clarke*, his complaint merely sought declaratory and injunctive relief against the defendants—Gedan and Chang —involved in the Rule 13 proceedings. Thus, the lack of clarity in his brief and the wording of his complaint lead us to conclude that he did not clearly raise the issue in the district court.

■ Ordinarily, we will decline to review an issue not clearly raised in the district court unless necessary to prevent manifest injustice, unless a new issue arises while the appeal is pending because of a change in the law, or unless the issue is purely one of law that is both central to the case and important to the public and the necessary facts are fully developed. *See Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir.1986) (per curiam), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987); *Yuckert v. Heckler*, 774 F.2d 1365, 1367 (9th Cir.1985), *rev'd on other grounds*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Even if one of these exceptions apply, we retain discretion to decline to address the issue.

We decline to review on this appeal Partington's attack on the Hawaii Supreme Court's decisionmaking process and judgment in *State v. Clarke*. The arguments implicate the *Rooker–Feldman* doctrine and neither party has briefed this significant issue. *Cf. Worldwide Church of God*, 805 F.2d at 893 n. 4 (noting that the *Rooker–Feldman* doctrine applies to section 1983 actions).

## V

■ Gedan and Chang requested costs and attorneys' fees pursuant to Fed.R.App. P. 38. Under Rule 38, we may award fees and single or double costs "when the result is obvious and the arguments on appeal wholly lack merit." *McCarthy v. Mayo*, 827 F.2d 1310, 1318 (9th Cir.1987) (citation omitted). Gedan and Chang contend that Partington's attempts to distinguish *Middlesex* were frivolous.

In response to this request for costs and attorneys' fees, Partington requested sanctions pursuant to Fed.R.Civ.P. 11 against Gedan and Chang for their request for costs and attorneys' fees. The Defense Lawyers joined Partington's request for sanctions.

We have power to sanction Gedan and Chang pursuant to Rule 11. *In re Mooney*, 841 F.2d 1003, 1005 (9th Cir.1988); *Rockwell International Credit Corp. v. United States Aircraft Insurance Group*, 823 F.2d 302, 304–05 (9th Cir.1987); *In re Curl*, 803 F.2d 1004, 1007 (9th Cir.1986).[8] Though Gedan and Chang's request for Rule 38 sanctions appears in their opening brief, we consider their request as a separate motion to this court, severable from the balance of the brief.

The Seventh Circuit's discussion of a request for sanctions under Fed.R.App.P. 38 is particularly appropriate. The court limited its opinion to the defendant's request for attorney's fees under Rule 38. The court stated:

The plaintiff's appeal, although not meritorious, is plainly not frivolous; it is the defendant's request for Rule 38 sanctions that is frivolous. We are troubled by the frequency with which lawyers in this court, whether representing appellants or appellees, are including in their briefs groundless requests for Rule 38 sanctions. The attitude seems to be, it can't hurt to ask. It can. Any frivolous motion, pleading, or request is subject to sanctions, including a motion or request for sanctions. *In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987). We remind the bar that sanctions will be forthcoming if counsel routinely request Rule 38 sanctions without careful investigation to determine that the appeal or defense sought to be sanctioned is indeed

---

**8.** The dissent suggests that Rule 11 is not a proper basis for imposing sanctions against Chang and Gedan. Conceding that this court has sanctioned attorneys pursuant to Rule 11, the dissent maintains that in each case the sanctionable conduct occurred in the district court. Dissent at 35 & n. 34. The dissent is mistaken. *In re Curl*, 803 F.2d 1004, 1007 (9th Cir.1986), held that:

Curl's excuses do not relieve him of responsibility for having *brought an appeal* that should not have been brought, for subjecting

Harvester to the burden of appellate litigation, and for having put this court to the task of *reading, analyzing, and judging his baseless arguments....* The *brief* filed by Curl was not well-grounded in fact and he had not made reasonable inquiry.

*Id.* (emphasis added). Contrary to the dissent's assertion, dissent at 35 n. 34, *In re Curl* is not ambiguous. This court sanctioned Curl for much more than filing a frivolous notice of appeal in district court; we sanctioned him for conduct occurring in the appellate court.

frivolous. *See also Aircraft Trading & Services, Inc. v. Braniff, Inc.,* 819 F.2d 1227, 1236 (2d Cir.1987).

*Meeks v. Jewel Co.,* 845 F.2d 1421, 1422 (7th Cir.1988) (per curiam) (*Meeks*). We believe that *Meeks* fully applies to the request for attorneys' fees and costs by Gedan and Chang.

Far from being frivolous, Partington's and the Defense Lawyers's arguments that *Middlesex* did not compel abstention were excellent, although not ultimately meritorious. The arguments required us to examine closely the Rule 13 proceedings and interpret whether Partington would be able to raise his serious constitutional challenges to Rule 13 in the Rule 13 proceedings before the special master and, if necessary, on appeal to the Hawaii Supreme Court. Moreover, we fully expect that the special master and the Hawaii Supreme Court will examine carefully and seriously Partington's allegations that Rule 13 violates the first amendment free speech clause as incorporated by the fourteenth amendment, the fifth amendment guarantee of procedural due process as incorporated by the fourteenth amendment, and the fourteenth amendment equal protection clause, both on its face and as applied. All of these issues are important and will require careful and detailed examination. To charge that these issues are frivolous is surprising—to claim Rule 38 sanctions for Partington's bringing them to our attention is the vice described by the Seventh Circuit in *Meeks.*

▮ We deny the request by Gedan and Chang for Rule 38 sanctions and grant the Rule 11 request by Partington and the Defense Lawyers. We order Gedan and Chang to pay Partington's and the Defense Lawyers' costs and attorneys' fees incurred in responding to the motion for Rule 38 sanctions. The district court is instructed to determine the amount of the sanction.

AFFIRMED.

NOONAN, Circuit Judge, concurring:

I concur in the opinion of the court and note that the foundation of the dissent is that the Hawaii Supreme Court "is, as a matter of law, biased against Partington." I do not find it so easy to reach the dissent's conclusion in the light of what, in terms of current law and history, has constituted a biased tribunal. The ideal has always been an absolutely impartial judge. In practice, the ideal has been tempered by the qualification put by the old Constitution of Massachusetts which guaranteed a judge "as impartial as the common lot of humanity will admit." Constitution of Massachusetts, Part 1, Declaration of the Rights of the Inhabitants (1780). What the common lot of humanity will admit has varied.

A leading recent case from this circuit is *United States v. Conforte,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Here a panel consisting of Circuit Judges Kennedy and Tang and District Judge Palmieri considered a criminal appeal by Joseph Conforte, the operator of a legalized house of prostitution in Nevada. The district judge who had presided at his trial had, as president of the Reno Unit of the American Contract Bridge League, participated in the decision to reject Conforte's application to join the League because of his prior convictions and proprietorship of the house of prostitution. At a cocktail party in 1973 the judge had also advised against accepting a contribution from Conforte for the University of Nevada football team. The judge had remarked that Conforte ran a house of prostitution and "was not good for Reno." *Id.* at 879.

District Judge Warren J. Ferguson heard Conforte's motion for a new trial on the grounds of the district judge's bias and found that the district judge had not been disqualified. *United States v. Conforte,* 457 F.Supp. 641 (D.Nev.1978). Upholding this ruling, Judge Kennedy for the panel stated: "We find no reasonable grounds for questioning the judge's impartiality because of bias or prejudice. . . . [T]he negative bias or prejudice of the kind alleged here will disqualify only if it is an attitude or state of mind—[that evinces] an aversion or hostility of a kind or degree that a fair minded person could not entirely set aside

when judging certain persons or causes." *Conforte*, 624 F.2d at 881.

This standard, it is apparent, is such that a previous legal ruling would not constitute disqualifying bias because it is not the kind of aversion or hostility that a fair-minded person would be unable to set aside. Specifically, at a later point in the opinion, the panel held: "A judge's view on legal issues may not serve as the basis for motions to disqualify." *Id.* at 882 (citations omitted).

The history that lies behind this treatment of disqualifying prejudice as a term of art is worth reviewing. The Judiciary Act of 1789 provided that district judges should not review their own decisions on appeal to the circuit courts, but at the same time provided that Supreme Court Justices should regularly act as circuit judges and made no provision for disqualifying them from reviewing their own decisions. In 1790 Chief Justice John Jay composed a letter to be sent by the entire Supreme Court to President Washington on this problem. Jay pointed out that having once decided an issue, a justice would not be

> secured against the influence of those predilections for individual opinions, and of those reluctances to relinquish sentiments publicly, though, perhaps, too hastily given, which insensibly and not unfrequently infuse into the minds of the most upright men some degree of partiality for their official and public acts.

Letter from John Jay to James Iredell (Sept. 15, 1790) (enclosing draft), *reprinted in* 2 G. McRee, *Life and Correspondence of James Iredell* (1857). Jay also alluded to the case where a justice might disqualify himself from sitting on his own decision but the public would still believe that in the decision of the Supreme Court reviewing his decision, "mutual interest had generated mutual civilities and tendernesses injurious to right." *Id.* Chief Judge Jay observed that appellate cases were usually doubtful with "much appearance of reason on both sides"; it would shake the confidence of the losing litigant and the public if the court in reaching such difficult questions appeared to be biased by the pre-judgment made by one or more of its members.

It is unclear whether any other justice signed Chief Justice Jay's letter. It was never sent. 1 J. Goebel, Jr., *History of the Supreme Court of the United States,* 556 (1971). The Supreme Court did not hesitate to act as a court of appeals from decisions of circuit courts made by the Justices as circuit judges. When in 1803 the practice was finally challenged by a litigant, the Court held that acquiescence in the practice prevented change. *Stuart v. Laird*, 1 Cranch 299, 309 (1803). The practice of judging appeals from one's own decisions continued in the Marshall court. *E.g.*, *The Antelope*, 23 U.S. (10 Wheat.) 66, 6 L.Ed. 268 (1825).

It could not be much clearer that the Founders and the early Supreme Court did not believe that a judge was biased as a matter of law because he had previously ruled on the question being presented to him. Eventually by statute the practice ceased in 1891. Judiciary Act of March 3, 1891, ch. 517, 26 Stat. 826, § 3. But the problem has scarcely disappeared. It is the regular practice of the circuit courts of appeal to schedule sessions en banc in which panel members, who have previously heard the case, sit as members. The session is called a "rehearing" but the reality is that the reargument before the en banc court is a fresh hearing. Often there is new briefing and always there is new oral argument. There are always judges sitting who have never heard the case before. At the same time the judges on the en banc panel who have heard the case the first time and decided it are not regarded as biased as a matter of law in sitting to judge this fresh appeal.

One difference exists between these practices and the case Partington presents. At least in the practices mentioned a party has had an opportunity to defend himself before the judge who ruled against him the first time, whereas Partington suffered an adverse ruling in a case where he had no possibility of defending himself. This distinction, however, is not material if the question is one of prejudice on the part of the judge. In the federal practices mentioned and in the Hawaii case the judges at

one point have made up their minds. In the most literal sense they are prejudiced judges: they have prejudged the case now before them. In the federal practices it was and is assumed that they can unmake their minds and consider the case afresh. Why should this assumption not be the case in Hawaii?

When a litigant was, for the first time, permitted to challenge a federal judge on the grounds of bias, it was on the basis of a statute enacted in 1911. The challenge could only be for "personal bias or prejudice." Act of March 3, 1911, ch. 231, 36 Stat. 1090, § 21. Interpreting this statute, the Supreme Court said that the party seeking to disqualify the judge must "state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice." *Ex Parte American Steel Barrel, Co. and Seaman,* 230 U.S. 35, 43–44, 33 S.Ct. 1007, 1009–10, 57 L.Ed. 1379 (1913). Applying the statute to disqualify District Judge Keneshaw Mountain Landis in 1921, the Court observed that the bias "must be based upon something other than rulings in the case." *Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921). In *Denis v. Perfect Parts,* 142 F.Supp. 263 (D.Mass.1956), Judge Bailey Aldrich had ruled in a previous case that the patent in question was valid. When the same patentee brought a case against a different defendant, the defendant objected that Judge Aldrich was prejudiced because he had already ruled on the validity of the patent. Judge Aldrich refused to disqualify himself, ruling, "The statute is directed to personal bias, not to previous judicial exposure to the same or similar questions." *Perfect Parts,* 142 F.Supp. at 263. The general standard that the bias must be personal and also arise from an extrajudicial source has been stated as the law of this circuit. *United States v. Carignan,* 600 F.2d 762, 763–64 (9th Cir.1979). A judge's participation in a "related or prior proceeding" is not sufficient even though he ruled against one of the present parties in that earlier proceeding. *Davis v. Fendler,* 650 F.2d 1154, 1163 (9th Cir.1981).

The dissent appears unwilling to acknowledge that as the law now stands a prior adverse ruling by a judge does not show the judge to be biased.

The point could be raised that the Justices of the Hawaii Supreme Court might be prejudiced because of the publicity attending the reversal in the *Clarke* murder case. The fact of publicity generated by a judges's prior ruling was considered at length in the Watergate case where the defendants included John Ehrlichman, Bob Haldeman and John Mitchell. The Court of Appeals for the District of Columbia, sitting en banc, rejected the defendants' contention that Judge John Sirica had been biased against them because his "public image and reputation" had "become inextricably intertwined with the prosecution of the Watergate matter." *United States v. Haldeman,* 559 F.2d 31, 137 (D.C.Cir.1976), cert. denied sub. nom., *Ehrlichman v. U.S.,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed. 2d 250 (1977). The court held that this kind of "interest" on the part of the judge was not disqualifying. Interest in order to disqualify must emanate from extrajudicial sources, otherwise "the prohibition would have had a reach far beyond anything Congress could rationally have contemplated." *Id.* The court refused to hold that Judge Sirica had been impermissibly biased. *Haldeman* was favorably cited by Judge Kennedy in *Conforte,* 624 F.2d at 882.

Sensibilities no doubt are changing on the question of judicial bias. In 1765 Blackstone could write: "... the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." 3 W. Blackstone, *Commentaries on the Laws of England* *361. While recusal on the basis of challenge by a litigant had existed in Roman law, canon law, and early English law, it had disappeared by Blackstone's time, *id.,* and was permitted in federal law only in 1911. Since that turning point there have been other signs that judicial disqualification may be looked at more sharply. For example, Judge Aldrich's decision in *Perfect Parts* was criticized by a

student writer. Note, "Disqualification of Judges for Bias in the Federal Courts," 79 *Harv.L.Rev.* 1435, 1451 (1966). In 1974 Congress enacted the statute requiring judges to disqualify themselves if a reasonable person could doubt their impartiality. 28 U.S.C. § 455(a). The practice of the Supreme Court in its first century in relation to circuit decisions now looks strange to us. It may be that the time will come when the participation of panel judges in en banc circuit hearings will appear an impermissible breach of impartiality. It may happen even that prior ruling on a matter will disqualify a judge from sitting on another case involving the same issue. But it is still generally recognized that it is difficult to lay down an absolute rule disqualifying a judge because he has ruled against a litigant in an earlier context. Note, *supra* at 1452. What due process requires is being worked out case by case. Given the history and the current state of law, the federal courts should give the Hawaii Supreme Court a chance to decide what due process requires.

In making that decision, a Justice of the Hawaii Supreme Court will be asking, "Have I so made up my mind by my earlier ruling in the criminal case that I cannot give a fair hearing to Partington's explanation of why he thought his strategy was appropriate?" and "Will public confidence in the courts be diminished if I, a justice who's already found Partington to have given ineffective assistance, now sit on a case where he is defending himself against this charge?" A federal court is not in a position to anticipate how a justice of the Hawaii Supreme Court will answer those questions.

The dissent places weight on a statement in *Withrow*, upholding a procedure in which a later acquittal by the administrative body concerned would not be "logically inconsistent" with a prior finding of probable cause. *Withrow v. Larkin*, 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975). There would, however, be no *logical* inconsistency between the Supreme Court reversing the murder conviction in *Clarke* because of ineffective assistance of counsel and then finding that in the discipli-

nary proceeding against Partington he had explained his strategy so that the court was now satisfied that he had not breached his responsibilities as a lawyer. The question of sixth amendment deprivation, decided in *Clarke*, is logically distinct from the disciplinary standards which Partington must meet to satisfy the Bar.

The dissent also places emphasis on the "practical" probability of prejudice. But the dissent admits that a judge may charge an attorney with violating Fed.R.Civ.P. 11, order him to show cause, conduct a subsequent hearing, and find against him. The dissent also admits that a court may cite an attorney for contempt of court, order him to show cause, and then preside over the contempt trial and find against him. As a practical matter, the probability of a judge in these circumstances having in mind a vivid impression of the professional breach of the lawyer, and being influenced by this impression, is much greater than the probability of an appeals court, months or years after the initial decision that occasioned the reference of the lawyer to disciplinary proceedings, being still prejudiced against the lawyer. The dissent is on treacherous grounds when it argues that practical prejudice is more likely in Partington's case than in the cases it accepts as routine judicial practice.

Judges have not been particularly good at recognizing their own biases. The major federal reforms have been made by the legislature—the elimination of Supreme Court Justices reviewing their own decisions in 1891; the introduction of recusal motions by litigants in 1911; the reasonable person test of objectivity in 1974. This history suggests the need for heightened self-scrutiny. The impartiality that "the common lot of humanity will admit" is now closer to the ideal.

REINHARDT, Circuit Judge, concurring and dissenting.

I concur only in the order set forth at the end of part V of the majority opinion which awards certain costs and attorneys' fees to Partington and the Defense Lawyers. I

dissent from the rest of Part V and all of Parts I through IV.

I do not believe that this is one of those exceptional cases in which *Younger* abstention is required. *See World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir.1987). Rather, I believe we should now decide that by virtue of its prior decision in *State v. Clarke*, the Hawaii Supreme Court is biased against Partington on the issue whether he rendered ineffective assistance of counsel and that its holding of a disciplinary hearing would violate his due process rights. After applying the three-part test from *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982), the majority concludes that *Younger* abstention is applicable. The majority would permit the Hawaii Supreme Court to resolve the question of its own bias. It reaches this conclusion solely on the basis of its reading of the third part of the *Middlesex* test. As the majority describes that part of the test, the plaintiff must be able "to litigate his federal constitutional claims ... before a competent and unbiased state adjudicator." Majority op. at 125. Because the majority concludes that the Hawaii Supreme Court may not be biased on the "constitutional question", it opts for abstention.

The majority misconceives the third part of the *Middlesex* test. Bias plays no role in the application of the three-part test. Rather, bias is an entirely separate matter. Where bias exists, *Younger* abstention is inapplicable, regardless of whether the three-part test is met. *Kugler v. Helfant*, 421 U.S. 117, 124–25 & n. 4, 95 S.Ct. 1524, 1530–31 & n. 4, 44 L.Ed.2d 15 (1975). The bias need not be on any particular claim. All that is necessary to bar abstention is that the Hawaii Supreme Court be biased on the disciplinary proceedings. Here, un-

der Hawaii Supreme Court Rule 13, the supreme court would have to determine whether Partington rendered ineffective assistance of counsel to Clifford Clarke. However, that court has already decided in *State v. Clarke* that Partington's assistance *was* ineffective and that a murder conviction against Clarke must be reversed for that reason.[1] Thus, Partington would be subjected to judgment by a tribunal which has already reached a judgment *on the merits* of his case.[2] Because of its prior actions, the Hawaii Supreme Court is, as a matter of law, a biased forum with respect to the Partington proceedings and the federal courts need not abstain.

The majority offers recusal of all of the justices of the Hawaii Supreme Court as a solution to the prejudgment problem. However, the structure of Rule 13 makes it clear that recusal of the entire court is not an available option in this case. Rule 13 was specifically designed to ensure that the justices of the supreme court would make the final determination of ineffective assistance, not a different group of judges. Recusal of the entire court in cases like Partington's would run directly contrary to the language and intent of the rule.

My conclusion that the Hawaii Supreme Court is biased against Partington is not meant to disparage the members of the court. They are undoubtedly able individuals and are entitled to a presumption of honesty and integrity. They have no adverse pecuniary interest. Nevertheless, other "[c]ircumstances and relationships must be considered." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Bias exists where a court has prejudged, or reasonably appears to have prejudged, an issue. The disciplinary proceedings must "satisfy the appearance of justice." *In re Murchison*, 349 U.S. at 136, 75 S.Ct. at 625 (quoting *Offutt v. Unit-*

1. At the oral argument in *State v. Clarke,* one of the justices of the Hawaii Supreme Court accused Partington of misconduct, contending that he had been deliberately ineffective at trial. As discussed in the text, the Hawaii Supreme Court ultimately reversed Clarke's conviction on the grounds that he received ineffective assistance from Partington.

2. Subjecting Partington to disciplinary proceedings before a biased tribunal would violate his due process rights. *See, e.g., Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed. 2d 488 (1973).

*ed States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)). In *State v. Clarke*, the justices concluded that the legal assistance Partington provided Clarke was ineffective, the very determination they would be called upon to make again in the Rule 13 proceedings. For this reason, a "realistic appraisal of psychological tendencies and human weakness" compels the conclusion that the Rule 13 proceedings involve an intolerably high risk of bias or prejudgment by the Hawaii Supreme Court. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Under these circumstances, abstract principles of comity, *Younger v. Harris*, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), as important as they are, do not bar a federal court from exercising its jurisdiction.

In my view, we would not only be performing our duty as a federal court properly, but would be saving the Hawaii Supreme Court the expenditure of much unnecessary time and effort were we to declare Rule 13 unconstitutional now. I see little choice for the Hawaii court when Partington's case reaches the justices. If they fail to invalidate the rule, certainly the federal courts will ultimately be required to do so.

## I

### RULE 13

Hawaii Supreme Court Rule 13 provides a procedure for determining whether a defense attorney should be disciplined for providing ineffective assistance of counsel. Under the rule, whenever a criminal conviction has been overturned on that ground by either the supreme court or the intermediate appellate court[3], the supreme court appoints a special master to decide whether action against the attorney is warranted. The special master, in turn, appoints a special prosecutor. At the conclusion of the proceedings, the special master dismisses the proceedings or recommends to the supreme court that corrective action be taken against the attorney. Both the attorney

and the special prosecutor may file exceptions to the special master's decision with the court. The supreme court reviews the special master's decision; the Court then makes an independent determination[4] whether the attorney provided ineffective assistance to the defendant and on that basis decides whether to dismiss the proceedings or order corrective action against the attorney.

## II

### PREJUDGMENT

Clearly, the critical feature of the Rule 13 proceedings is the determination the Hawaii Supreme Court is required to make with respect to counsel's ineffectiveness. It must make this critical determination regardless of whether it or the intermediate appellate court made the earlier determination that counsel's representation was ineffective, and reversed the criminal conviction on that ground. Here, we are presented with an extreme form of the Rule 13 process: the supreme court, *sua sponte*, raised and determined the ineffectiveness issue during the criminal proceeding; it would now be required to resolve the identical issue a second time in the disciplinary proceeding.

The majority first asserts that *Younger* abstention is appropriate here because "[t]he Hawaii Supreme Court has never had the opportunity to hear Partington's argument that due process requires that he not be judged by the court after it has ruled on his performance in the criminal case.... We cannot and should not guess how the court will respond." Majority op. at 126. Thus, the majority apparently takes the position that Partington must demonstrate not only that the Hawaii Supreme Court has prejudged the merits of the disciplinary proceeding but also that the court has prejudged the issue of *whether* it has prejudged the merits of that proceeding.

The majority's argument misconceives the basic rule governing abstention and

---

**3.** See note 28, *infra.*

**4.** See note 12, *infra.*

biased state tribunals. The fundamental principle is that compelling an individual to present his case to a biased tribunal offends due process and federal courts will enjoin such an unconstitutional proceeding. *Gibson v. Berryhill*, 411 U.S. 564, 570, 577, 93 S.Ct. 1689, 1693, 1697, 36 L.Ed.2d 488 (1973). When a federal claimant alleges that a state adjudicator is biased, it is the federal court which determines whether that allegation is correct. *See Gibson*, 411 U.S. at 578–79, 93 S.Ct. at 1697–98; *see also Kugler v. Helfant*, 421 U.S. 117, 125, 127–28, 95 S.Ct. 1524, 1531, 1532, 44 L.Ed. 2d 15 (1975). The question is not referred to the state court. If the federal court concludes that bias exists, the finding of a due process violation follows automatically. *Gibson*, 411 U.S. at 577, 93 S.Ct. at 1697.[5] No more is required. The federal court does not abstain.[6] In short, abstention doctrine does not require a person to ask a tribunal that is biased on the merits of his case whether it is in fact biased. Nor must that person ask the biased tribunal whether the fact that it is biased would violate the due process clause. Clearly, it would—as a matter of federal constitutional law, and a federal injunction, not abstention, is the appropriate remedy.

Indeed, the parallel between Partington's situation and the one considered by the Supreme Court in *Gibson* is striking. *Gibson*, like the present case, was a disciplinary proceeding (license revocation) before a body that was allegedly biased on the revocation issue. Thus, the licensee faced a potential due process violation. Notably, in *Gibson*, the Court did not inquire into whether the state licensing agency was biased on the question of the validity of the challenged statutory procedure. Rather, it considered only the question whether the agency was biased as to "the revocation of appellees' licenses." 411 U.S. at 578, 93 S.Ct. at 1697. Moreover, it held irrelevant the fact that the state courts would review the revocation proceeding de novo. *Id.* at 577, 93 S.Ct. at 1697. Finally, the fact that petitioners had not sought to invalidate the unconstitutional state procedure in the available and unbiased state court forum did not deter the Court from affirming the district court's action enjoining the state proceeding. Procedurally, our case and *Gibson* are identical. In my opinion, *Gibson* is controlling here. If the Hawaii Supreme Court is biased as to Partington's disciplinary issues, the result here should be the same as in *Gibson;* we should not abstain.

The majority attempts to distinguish *Gibson* on the basis that "a tribunal comprised of optometrists does not have the ability to entertain constitutional claims." Majority op. at 127 n. 4. This is not a material distinction. In deciding that *Younger* abstention was inappropriate, the Supreme Court did not even mention the fact that "a tribunal composed of optometrists" cannot hear constitutional claims, let alone rely on that fact (if indeed it is a fact).[7] Rather, the Court found *Younger* abstention unwarranted simply because the state tribunal (composed of optometrists or not) was biased *on the revocation issue*. No more was required to be shown in *Gibson;* no

5. *Cf. Kugler*, 421 U.S. at 128, 95 S.Ct. at 1532 (framing the abstention issue as whether the "judicial system provides procedural safeguards to guarantee that [the federal court plaintiff] *will not be denied due process of law* in the state trial or appellate process") (emphasis added).

6. An exception exists where the state provides an alternate procedure which ensures a fair tribunal in place of the biased tribunal, *e.g.*, by way of recusal. *See Kugler v. Helfant*, 421 U.S. 117, 127–28, 95 S.Ct. 1524, 1532, 44 L.Ed.2d 15 (1975). The applicability of the recusal exception is discussed in Section III, *infra.*

7. I must confess that I do not know whether the majority's description of the powers possessed, in 1973, by the Board of Optometry under Ala-

bama law is correct. In California until a few years ago, administrative agencies, including licensing boards, *did* have the power (and the duty, I believe) to make rulings on constitutional issues. This was so regardless of whether the board was an industry board or an industry-labor board, composed exclusively of laymen, or some other type of board. The Attorney–General's office provided advice to all these boards on constitutional questions and the boards then made their rulings. Long after 1973, the voters of California adopted an initiative measure removing from all administrative boards, including those composed of lawyers, the power to declare statutes unconstitutional.

more should be required here. This point can not be overemphasized. If, as appears clear, the Hawaii Supreme Court is biased as to the merits of Partington's disciplinary proceeding, that tribunal is not competent to hear that proceeding—regardless of whether non-merit issues may be raised during that proceeding, or whether the court is or is not biased as to any of those non-merit issues.

Conversely, the majority asserts that *Younger* abstention is required here because the Hawaii Supreme Court "has the ability to entertain and resolve constitutional claims." Majority op. at 127 n. 4. In essence, the majority appears to be contending that it is proper to force an individual to appear before a biased tribunal in a disciplinary proceeding, so long as that tribunal could conceivably avoid reaching the merits of the proceeding. My reading of *Gibson* leads me to the contrary conclusion. An individual can *not* be summoned before a biased tribunal when the primary issue before the tribunal is the very issue on which it is biased. It is fundamental that compelling an individual to present his case to a biased tribunal offends due process. *Gibson*, 411 U.S. at 570, 577, 93 S.Ct. at 1693, 1697. An individual required to appear before a state tribunal that is biased on the merits of the proceeding may resort directly to federal court, whether or not the state tribunal has the authority to dismiss the proceedings for bias, lack of jurisdiction, or on any other grounds.[8] As *Gibson* illustrates, the fact that there are state remedies for resolving or determining the fairness of the procedure is irrelevant, regardless of when or in what state forum that determination could be made.

In *Gibson*, the Supreme Court stated explicitly that *Younger* abstention is not required "simply because [state] judicial review, *de novo* or otherwise, would be forthcoming at the conclusion of the administra-

tive proceedings." 411 U.S. at 577, 93 S.Ct. at 1697 (footnote omitted). Moreover, it is clear that the federal court plaintiff in *Gibson* had a completely unbiased state court system in which to seek injunctive relief prior to the administrative proceedings and thus had perfectly adequate state court remedies for his due process claims. For example, he could have asked a state trial or appellate court, rather than a federal district court, to enjoin those proceedings. An unbiased state court is, as the majority points out, generally presumed to be as capable as a federal court of protecting federal constitutional rights. Nevertheless, the Supreme Court in *Gibson* did not require the plaintiff to first seek relief in state court. Rather, he was permitted to go directly to *federal* court to obtain the appropriate remedy—a federal court injunction against the proceedings in the biased state forum.

The only difference between the facts and circumstances of *Gibson* and those in this case (other than the distinction previously discussed) is that in *Gibson*, the state provided *both* an entirely unbiased state court review of the unconstitutional proceedings *and* an unbiased state court system in which to seek an injunction against the unconstitutional proceedings, while here, there is *neither* an entirely unbiased state forum in which Partington could seek injunctive relief before the unconstitutional proceedings are held *nor* one in which he could do so afterwards.[9] In Partington's case, the Hawaii Supreme Court is not only the biased forum, but also the first and last judicial body from which Partington may seek relief. Thus, the state court remedies in *Gibson* were, if anything, far *more* hospitable to the plaintiff than those offered to Partington here. As *Younger* abstention was improper in *Gibson*, it is *a fortiori* improper here, if as I conclude, the Hawaii

---

**8.** Where state law provides that a biased judge must recuse himself, the state law does *not*, of course, require the individual to appear before a biased tribunal (except, possibly, in some instances for the limited purpose of filing the disqualification motion). The question of recusal is discussed in Section III, *infra*.

**9.** I seriously doubt that, as a legal matter, a lower court, in Hawaii or elsewhere, has the authority to enjoin a proceeding before a higher court.

Supreme Court is biased on the ineffective assistance claim.[10]

The majority's confusion regarding abstention and bias appears to be due to its misunderstanding of the third prong of the *Middlesex* test. The majority consistently describes that prong as requiring that Partington have the ability to litigate his constitutional claims before an unbiased state adjudicator. Majority op. at 120–21, 125–26. Actually, the third prong of *Middlesex* does not mention bias—because under *Younger* that issue is dealt with separately. The third prong requires only that Partington have "an adequate opportunity in the state proceedings to raise constitutional challenges." 457 U.S. at 432, 102 S.Ct. at 2521. The critical fact that the majority overlooks is that in *Younger*, the Supreme Court recognized that even if the three-part test for abstention (as later described in *Middlesex*) was met, abstention would be improper if the state action was brought in bad faith or for purpose of harassment or in other *extraordinary circumstances*. 401 U.S. at 53–54, 91 S.Ct. at 754–55; *see also Middlesex*, 457 U.S. at 437, 102 S.Ct. at 2524. Bias on the part of the state tribunal is one of those extraordinary circumstances which renders *Younger* abstention inappropriate, even if all three prongs of the *Middlesex* test are met. *Kugler v. Helfant*, 421 U.S. 117, 124–25 & n. 4, 95 S.Ct. 1524, 1531 & n. 4; *cf. World Famous Drinking Emporium*, 820 F.2d at 1082. Thus, it is simply irrelevant whether Partington will be able to raise his constitutional claims before the Hawaii Supreme Court or whether the Court is biased as to those claims; for if the Court has prejudged the merits of the disciplinary proceeding, it is a biased tribunal and *Younger* abstention is inapplicable.[11]

The majority dismisses the Court's statement in *Kugler* that bias is a separate element by calling it dictum. Majority op. at 22 n. 3. Whatever the merits of that categorization, it seems apparent that the Court was correct when it reached its conclusion. *Younger* abstention is barred when, *inter alia*, "extraordinary circumstances" render the proceedings unfair, a concern that is independent of whether the federal court plaintiff will have an adequate opportunity in the state proceedings to raise his federal constitutional claims. *Middlesex* listed as examples of this rule a proceeding brought in bad faith or for purposes of harassment. 457 U.S. at 435, 102 S.Ct. at 2522. Certainly a proceeding brought before a biased tribunal is even more unfair to a licensee, and even more violative of his due process rights, than a proceeding that is merely initiated for an improper purpose. In the case of bad faith or harassment, the licensee is required to submit to a proceeding unnecessarily, but should prevail on the merits; in the case of bias, the licensee does not have a fair chance to prevail at all, and an adverse result is, for practical purposes, a foregone conclusion. Thus, the Court's determination in *Kugler* that bias is an "extraordinary circumstance" barring *Younger* abstention was compelled by reason and logic as well as precedent, and the majority clearly errs in rejecting the Court's analysis.

In any event, whether bias is considered separately from the three-prong *Middlesex* test, or whether we disregard the clear language in *Kugler* and consider bias to be a part of the third prong of that test, the result in this case would be the same. As previously discussed, under *Gibson* it is clear that bias on the merits of a discipli-

---

**10.** In some instances, a *claim* of bias would be sufficient to preclude abstention, at least until the federal court has had an opportunity to resolve the factual issues relating to the claim. Here, however, there are no factual issues in dispute with respect to the alleged bias.

**11.** It is worth noting that a letter dated April 27, 1987 to Partington from the Chief Justice, a letter the majority appears to accept as the view of the entire court, Majority op. at 126, suggests

that the court has in fact prejudged the due process claim. *See* ER 444 (Chief Justice finds "mystifying" Partington's contention that he *could not receive an impartial hearing on the* ineffectiveness claim). Surprisingly, at a later point in the majority opinion, the letter is summarily dismissed as at most reflecting the opinion of the Chief Justice. Majority op. at 128 n. 7.

nary proceeding is sufficient to preclude *Younger* abstention.

The majority next concludes that the Rule 13 procedure does not present an unacceptable risk of prejudgment on the ineffectiveness issue, although it is far from clear why it reaches that conclusion.[12] Majority op. at 125. The majority appears to accept the *Withrow* test, which states that "if the initial view of the facts based on the evidence derived from non-adversarial processes as a *practical or legal* matter foreclose[s] fair and effective consideration at a subsequent adversary hearing leading to ultimate decision, a substantial due process question [is] raised." *Withrow*, 421 U.S. at 58, 95 S.Ct. at 1470 (emphasis added). With respect to the issue of "legal" bias, the majority concludes that Partington has not demonstrated that the Hawaii Supreme Court is legally foreclosed "from considering the ineffectiveness issue de novo." Majority op. at 126. On that point, I am in agreement.[13] However, the majority also concludes that there is no "practical" impediment to the Court's examining the issue in a fair and impartial manner. *Id.* at 125, 126. The majority offers *no* explanation for this conclusion, and cites no case law or other authority. In fact, the majority opinion contains no discussion whatsoever of the question whether the Hawaii Supreme Court could, as a practical matter, serve as an unbiased adjudicator. Instead, it avoids the issue entirely, apparently preferring to base its conclusion that Partington will be able to obtain a fair hearing entirely on the supposition that all of the members of the supreme court will recuse themselves.[14] *Id.* at 126.

I believe that, as a practical matter, the Hawaii Supreme Court has prejudged Partington's case. At the very least, there is an intolerable risk of prejudgment. The sole reason Partington is now facing disciplinary proceedings is because in a previous proceeding the Hawaii Supreme Court, *sua sponte*, raised *and decided*, on the merits, the issue of ineffective assistance of counsel in a manner adverse to him. The issue the court previously decided is the identical issue it will now be required to address in the Rule 13 proceedings. In my view, the Hawaii Supreme Court is not, as a practical matter, an unbiased adjudicator.

There are several federal statutes which are concerned with the issue of judicial bias. *See* 28 U.S.C. §§ 47, 144, & 455 (1982). These statutes are premised on the simple proposition that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). But a fair trial means more than simply the absence of actual bias. "[O]ur system of law has always endeavored to *prevent even the probability of unfairness.*" *Id.* (emphasis added). To this end, "justice must satisfy the appearance of justice." *Id.* (quoting *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)). Thus, we must constantly be alert to procedures which "under a realistic appraisal of psychological tendencies and human weakness . . . pose[] such a risk of actual bias or

---

**12.** At one point, the majority argues that Partington has not alleged that the Hawaii Supreme Court is biased "on the primary issue . . . [namely] whether corrective action is warranted [against Partington] under Rule 13." Majority op. at 126. Any distinction between whether the court is biased "merely" on the ineffective assistance issue rather than on the corrective action issue is semantic gameplaying, at best. I find it hard to believe that anyone would suggest that a court that has prejudged the issue whether Partington rendered ineffective assistance is unbiased on the question whether he should be the subject of disciplinary action. The Hawaii Supreme Court is *necessarily* required to judge the issue on which it is biased *before* determining the appropriate remedy. Obviously, if the court were to decide the issue relating to conduct in Partington's favor, there would be no need for it to reach the question whether corrective action is warranted.

**13.** Partington has not demonstrated by unambiguous authority that the court is legally precluded from reconsidering its initial determination of ineffectiveness. For the purposes of our *Younger* analysis, we must assume that the Hawaii Supreme Court is free to reexamine its previous legal conclusion on the question of ineffective assistance. If, however, this assumption turns out to be incorrect, I do not think anyone could argue that the Rule 13 proceeding would satisfy due process.

**14.** The question of recusal is discussed *infra,* section III.

prejudgment that the practice[s] must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow*, 421 U.S. at 47, 95 S.Ct. at 1464.

While we can readily identify the reasons why judicial bias cannot be tolerated, we must still determine when a judge's previous involvement with a case creates such a risk of bias that it would be a violation of due process to allow him to be further associated with the proceedings. Two decisions help frame the issue. Prejudgment, or an unconstitutional risk of prejudgment, has been found where the contents of a speech by a judge "plainly reveale[d]" that he had, prior to the commencement of the proceedings before him, reached a conclusion as to the merits of a case that involved complex questions of fact and law. *Texaco, Inc. v. Federal Trade Commission*, 336 F.2d 754, 760 (D.C.Cir.1964), *vacated on other grounds*, 381 U.S. 739, 85 S.Ct. 1798, 14 L.Ed.2d 714 (1965).[15] Also, judges have been disqualified from presiding over appeals from decisions in cases, or involving issues, originally tried before them as lower court judges. *See, e.g., Swann v. Charlotte–Mecklenburg Board of Education*,

431 F.2d 135, 137 (5th Cir.1970) (Order of Disqualification and Memorandum of Decision by Craven, J.) (appeals court must "be constituted of judges uncommitted and uninfluenced by having expressed or formed an opinion in the court of first instance") (quoting *Moran v. Dillingham*, 174 U.S. 153, 19 S.Ct. 620, 43 L.Ed. 930 (1899)).[16]

While *Texaco* and *Swann* provide some guidance, there are significant differences between those cases and Partington's. The commissioner's prejudgment in *Texaco* was extrajudicial; the remarks were made during a public appearance and were not based on knowledge the commissioner obtained during an official proceeding. *Cf. United States v. Studley*, 783 F.2d 934 (9th Cir. 1986). *Swann* was concerned with the issue of what constitutes a meaningful review by a higher court of a lower court's decision. In the present case, the issue is: when is a court that is called upon to decide a complex question of law and fact as to which it has already reached a final determination in an earlier proceeding presumed to have prejudged the question?

Although *Texaco* and *Swann* are not dispositive, the policies which underlie them

**15.** Our present Chief Justice has said that the mere fact that a judge has expressed an opinion on a purely legal question would not demonstrate bias or prejudgment. *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (memorandum on recusal by Rehnquist, J.). We have reached the same conclusion. *United States v. Conforte*, 624 F.2d 869, 882 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). The situations discussed by Justice Rehnquist and by this court in *Conforte* were far different from the one present in *Texaco*. *Conforte* is discussed further *infra*, note 20.

**16.** In *Swann*, Judge Craven applied 28 U.S.C. § 47, which explicitly forbids the practice of a judge hearing an appeal from a case which he tried. The same result has been reached through application of 28 U.S.C. § 455, which requires a judge to recuse himself to avoid the appearance of impropriety. *Rice v. McKenzie*, 581 F.2d 1114, 1116–18 (4th Cir.1978) (federal judge, who, as chief justice of state supreme court, had presided in affirming appeal of convicted person was disqualified from federal habeas corpus proceedings because of concerns with impartiality). *Cf. Withrow*, 421 U.S. at 58 n. 25, 95 S.Ct. at 1470 n. 25 ("when review of an initial decision is mandated, the decisionmaker must be other than the one who made the decision under review").

In light of current practice, the comments in the concurring opinion on the history of the practice of the Supreme Court acting "as a court of appeals from decisions of circuit courts made by the Justices as circuit judges," Concurring op. at 132, and specifically its discussion of *Stuart v. Laird*, 1 Cranch 298 (1803), and *The Antelope*, 23 U.S. (10 Wheat.) 66, 6 L.Ed. 268 (1825), while interesting, shed no light on the specific issue before us. Just as our view of the slave trade has changed from that espoused in *The Antelope*, so too has our view of the propriety of judges sitting in judgment on their own decisions. Moreover, in *The Antelope*, no challenge was made to the individual Justice's participation in an appeal from a case in which he had sat as a circuit judge; perhaps more interestingly, in *Stuart*, "[t]he Chief Justice, having tried the cause in the court below, declined to give an opinion." *Id.* at 306. Most importantly, in neither case did the Justices even consider the question we are presented with, that is, whether a court comprised wholly of judges who decided the same case at a lower judicial level may hear an appeal of that lower court decision, and certainly the concurring opinion does not suggest that any such practice ever existed.

compel the conclusion that the Hawaii Supreme Court is biased in this case. The common thread that links *Texaco* and *Swann* is the concept that no person can be compelled to litigate a controversy before a judge whose prior conduct or connection with the case makes it likely that he will have prejudged the outcome. The reason that due process does not permit a judge to hear an appeal of a case he previously tried as a lower court judge has been well stated. "Such an appeal is not from Phillip drunk to Phillip sober, but from Phillip sober to Phillip intoxicated with the vanity of a matured opinion and doubtless also a published opinion." *Swann*, 431 F.2d at 137 (quoting an address by Walter B. Hill to the American Bar Association). The concerns reflected in *Swann* relate not only to the risk that a judge will have actually prejudged a case, but to the appearance of partiality as well. As the Supreme Court made abundantly clear in *In re Murchison*, "justice must satisfy the appearance of justice." 349 U.S. at 136, 75 S.Ct. at 625.

Here, the court which will decide in the disciplinary proceeding whether Partington provided ineffective assistance of counsel is the same body that has already determined in *State v. Clarke* that Partington did precisely that.[17] It has also issued an opinion to that effect and has reversed a murder conviction on that ground. These circumstances present an unacceptable risk of prejudgment, one that neither Partington nor any other litigant should be required to assume. They also fall far short of satisfying "the appearance of justice".

The conclusion that the Hawaii Supreme Court does not qualify as an impartial body insofar as Partington's Rule 13 proceeding is concerned finds strong support in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In *Withrow*, the Court considered whether the combination of investigative and adjudicative functions in a state administrative agency violated due process. It suggested that bias or prejudgment would be established if an initial accusatory finding foreclosed, as a practical matter, a later adjudicatory finding to the contrary.[18] *Id.* at 58, 95 S.Ct. at 1470. The Court concluded that the state practice did not violate due process, because the initial investigative decision was one of probable cause, a determination that would not be logically inconsistent with a subsequent adjudicatory determination of "no violation". *Id.* at 57, 95 S.Ct. at 1469. Or, as the Court put it, a favorable second decision would not constitute an implicit admission that the first was erroneous.

Here, the Hawaii Supreme Court has not merely made a preliminary or accusatory finding that Partington *may have* rendered ineffective assistance of counsel. Rather, it has made a finding *on the merits* that the assistance Partington rendered was so ineffective as to require the reversal of a murder conviction. Certainly, a subsequent finding by that same court in a Rule 13 proceeding that Partington had not rendered ineffective assistance of counsel would be logically inconsistent with its prior finding.[19] The Court would "implicitly

---

**17.** The concurring opinion suggests at one point that prejudgment "must be based upon something other than rulings in the case." Concurring op. at 133, *quoting Berger v. United States*, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921); *see also Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir.1981) (judge's participation in prior or related proceeding not sufficient to constitute bias). However, none of the cases the concurring opinion relies upon (with one exception) involves a situation in which, as here, the judges will be called upon to determine the same complex question of fact and law on which they previously reached a final determination. The one exception, *Denis v. Perfect Parts, Inc.*, 142 F.Supp. 263 (D.Mass.1956), is discussed in note 20, *infra*.

**18.** The majority apparently does not disagree with this suggestion. *See* Majority op. at 124, 126.

**19.** None of this discussion is meant to minimize the problem of ineffective assistance of counsel for criminal defendants, nor to suggest that the Hawaii Supreme Court cannot fulfill its duty to supervise attorney conduct. Nevertheless, the Court cannot exercise its authority in a manner which violates the requirements of due process. A Rule 13 procedure can undoubtedly be devised which meets those requirements. See *infra* pages 146–47.

be admitting error in its prior finding."[20] *Id.* 421 U.S. at 57, 95 S.Ct. at 1469.

The concept of "logical inconsistency", emphasized in *Withrow*, helps distinguish this case from cases holding that a judge who initiated the proceedings may preside at the hearing on the merits.[21] For example, a judge who charges an attorney with violating Rule 11 and orders him to show cause is permitted to conduct the subsequent hearing. *See, e.g., Tom Growney Equipment, Inc. v. Shelley Irrigation Dev., Inc.,* 834 F.2d 833 (9th Cir.1987). A determination by the judge at the later hearing that Rule 11 sanctions are not appropriate would not be inconsistent with his issuance of the initial charge. The initial charge or finding is similar to one of probable cause, while the later determination on the merits is akin to one of guilt or innocence. Similarly, when a court cites an attorney for contempt, orders him to show cause, and then presides over the contempt trial, *e.g., Nilva v. United States,* 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957), a finding of not guilty is not logically inconsistent with the fact that a charge was preferred. Another example is the issuance of a preliminary injunction by a judge who subsequently presides over a trial in which he determines whether a permanent injunction should issue. This practice is proper because the question at the

**20.** The concurring opinion concludes that there would be "no *logical* inconsistency between the Supreme Court reversing the murder conviction in *Clarke* because of ineffective assistance of counsel and then finding that in the disciplinary proceeding against Partington he had explained his strategy so that the court was now satisfied that he had not breached his responsibilities as a lawyer." Concurring op. at 134 (emphasis in original). The logic of this statement escapes me. If the court determines that Partington's strategy was reasonable and that it justified his trial tactics, I do not see how it could also say that there was a sixth amendment violation. If the strategy justified the tactics, then the assistance was *not* ineffective.

The concurring opinion also concludes, without analysis, that the fact that the Hawaii Supreme Court has already reversed a murder conviction because the defendant received ineffective assistance from Partington does "not constitute disqualifying bias [on the part of the members of the court] because it is not the kind of aversion or hostility that a fair-minded person would be unable to set aside." Concurring op. at 132. However, the case that it relies on, *United States v. Conforte,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980), involved a type of prejudgement wholly unlike the prejudgment present in this case. In *Conforte,* the alleged bias was *personal*—the trial judge had allegedly made derogatory statements about the defendant some years prior to the time when the defendant appeared before the judge. 624 F.2d at 878–79. We held that the bias alleged was not sufficient to require recusal, and that disqualification for *personal* bias required "an animus more active and deep-rooted than an attitude of [non-racial] disapproval toward certain persons because of their known conduct." *Id.* at 881 However, the question of the depth of personal animosity required to constitute disqualifying bias bears no relationship to the question whether a court has actually prejudged

the merits of the case before it because it has rendered a final decision in a previous case on the same issue it is now called upon to decide.

The only case that the concurring opinion relies on that is at all factually similar to our case is *Denis v. Perfect Parts, Inc.,* 142 F.Supp. 263 (D.Mass.1956). In that case, the district judge declined to recuse himself at the request of the defendant, although he would be called upon to determine the validity of a patent which he had declared valid in a previous case that involved the same plaintiff but a different defendant. *Id.* at 263. The judge declined to disqualify himself, because he concluded that 28 U.S.C. § 144, the disqualification statute, "is directed to personal bias, not to previous exposure to the same or similar questions." *Id.* The judge believed that a contrary result would minimize or eliminate the value of judicial experience and exposure. *Id. Denis* would thus suggest a different result than the one that I reach here. However, as the concurring opinion points out, "[s]ensibilities no doubt are changing on the question of judicial bias." Concurring op. at 133. Indeed, the author of the opinion in *Denis* has expressed considerable doubt about the decision he reached in that case. *See Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d 735, 739 (1st Cir.1977). Thus, *Denis,* while never controlling on this court, cannot any longer even be considered persuasive.

**21.** Although Judge Noonan does not disagree with the use of the "logical inconsistency" standard, he would seem to rely on each individual justice's view as to whether he has prejudged Partington's case. *See* Concurring op. at 134. This conclusion appears to be at odds with the prevailing notion that an objective standard is to be used. *See, e.g., Berger v. United States,* 255 U.S. 22, 33–34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921); *United States v. Conforte,* 624 F.2d 869, 881 (9th Cir.), *cert. denied* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); 28 U.S.C. § 455 (1982); *see also* Concurring op. at 134.

hearing on the preliminary injunction is solely one of "reasonable cause"; no determination on the merits is made at that time. Thus, there is ordinarily neither the appearance nor the reality of logical inconsistency or prejudgment in any of the above cases when the merits are heard.[22]

At first glance, a more troublesome analogue is presented when a trial judge presides over a trial for the second time after his initial decision has been reversed on appeal. This practice does not generally create a risk of bias or prejudgment implicating due process concerns.[23] See, e.g., NLRB v. Donnelly Garment Co., 330 U.S. 219, 236, 67 S.Ct. 756, 765, 91 L.Ed. 854 (1947); United States v. Hollis, 718 F.2d 277 (8th Cir.1983), cert. denied, 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984). However, our judicial system has built-in mechanisms that serve to protect litigants against the risk of prejudgment in such cases, and help to maintain the appearance of impartiality. When a trial judge presides over a trial after remand, intervening appellate guidance significantly minimizes the risk of bias. The trial judge is advised that his initial decision was incorrect, and receives specific guidance from the reviewing court as to the aspects of the trial which created reversible error. Usually, the trial judge is also given specific instructions as to what remedial or corrective actions should be taken in the second trial. In addition, the decision in the second trial will itself be subject to judicial review. That review also serves as an independent restraint on the trial judge, because he will be aware that evidence of bias or prejudgment on his part will lead to a second reversal.[24]

None of the procedures which serve to eliminate or reduce the risk of prejudgment when a trial judge rehears a case following reversal or remand are applicable in Rule 13 proceedings. Under Rule 13, there is no superior authority that will have informed the supreme court that its initial decision was incorrect prior to the time it hears the issue for the second time; no higher court will have explained to the Hawaii Supreme Court the nature of its errors in the initial proceedings or provided it with guidance as to those errors. Nor will the supreme court have had the benefit of specific instructions as to how to conduct the second proceeding. While remand to a trial court occurs because that court's initial decision has been found to be incorrect and has been reversed, no comparable events will have occurred here. To the contrary, the disciplinary proceedings will take place here because the Hawaii Supreme Court's determination of ineffective assistance has *not* been vacated or set aside by a higher court. Equally important, the supreme court's determination in the Rule 13 proceedings will be final, with no right of appeal to a superior judicial body.[25]

**22.** It is worth noting that the judge who initiates the contempt proceedings is not always permitted to preside over them. For example, if "the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." Fed.R.Crim.P. 42(a). *See also In re Murchison,* 349 U.S. 133, 137, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (trial for contempt during grand jury proceedings before same judge who acted as one-man grand jury violates due process because "[h]aving been a part of that process a judge cannot be ... wholly disinterested in the conviction or acquittal of those accused").

**23.** Of course, an appellate court may, under its supervisory powers, reassign the case on remand to a different trial judge, if it determines under the circumstances of the case that allowing the same judge to rehear the case poses an unacceptable risk of bias. *See, e.g., Smith v. Mulvaney,* 827 F.2d 558, 562–63 (9th Cir.1987).

**24.** The practical reality of retrying numerous cases after appeal virtually requires that, with appropriate safeguards, our judicial system allow the same judge who presided over the first trial to preside again after appeal. *United States v. Harris,* 458 F.2d 670, 678 (5th Cir.) (" 'used' judges must simply be recycled" to avoid problem of no judge in a particular venue being able to hear a litigant's case), *cert. denied,* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972). Neither the courts generally nor Hawaii courts in particular face a comparable practical problem with respect to the adjudication of disciplinary cases.

**25.** The concurring opinion suggests that our current en banc practice also presents a troublesome analog. Concurring op. at 131–33. However, that circumstance is wholly different from the one with which we are now confronted. When a circuit court sits en banc, the court *rehears* the case at issue, just as the original

For the reasons discussed above, I cannot agree that Partington must show more than the fact that the Hawaii Supreme Court is biased on the merits of the disciplinary proceeding. Nor can I agree that Partington has failed to establish the existence of that bias. In my opinion, the court's prior determination in *State v. Clarke* that Partington provided ineffective assistance would "give[] fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *United States v. Haldeman*, 559 F.2d 31, 136 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). The Supreme Court has warned us to "be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice." *Withrow*, 421 U.S. at 54, 95 S.Ct. at 1468. The majority fails to consider sufficiently the nature of the triggering determination in Rule 13 proceedings, and thus gives short shrift to the very real problem of prejudgment the rule presents. The Supreme Court has held that, if a state administrative agency is biased, *Younger* abstention is inappropriate even if state "judicial review, *de novo* or otherwise, would be forthcoming at the close of the administrative proceedings." *Gibson*, 411 U.S. at 577, 93 S.Ct. at 1697 (footnote omitted). The same conclusion holds true *a fortiori* where, as here, the biased decision of a court will not be subject to *any* review.[26]

## III

## RECUSAL

In concluding that Partington will be able to bring his claims before an impartial tribunal, the majority does not determine whether the justices of the Hawaii Supreme Court have, as a *practical* matter, prejudged his claim; nor does it consider whether disciplinary proceedings before those justices would give the requisite appearance of impartiality. *See* Majority op. at 120. Rather, its conclusion is based entirely on Partington's supposed ability to obtain the recusal under Haw.Rev.Stat. § 601-7(b) (1985) of all five of the justices of the court.[27] Majority op. at 126-28. In short, the majority appears to assume that some group of judges other than the sitting supreme court justices will hear Partington's case. Once again the majority does not discuss the legal issue involved, that is, whether Hawaii's recusal statute is applicable here; this time it simply asserts, *ex cathedra*, that it is.

Hawaii law provides for recusal of the entire court "[w]hen necessary." Haw. Rev.Stat. § 602-10. On its face, this language would seem to support the majority's position. But recusal statutes are gen-

panel may. The en banc judges do not, as the Hawaii Supreme Court under Rule 13 is required to do, decide a complex issue of fact and law on which the court has already reached a *final* determination in a *prior* case. The practice of granting a rehearing in a pending case poses none of the problems presented by a court requiring a party to submit to it for decision an issue on which the court has already rendered a final decision adverse to that party.

**26.** The majority opinion contends that Hawaii's Rule 13 disciplinary procedure is "strikingly similar" to the New Jersey disciplinary proceeding which the Supreme Court held, in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), provided a charged attorney with an adequate opportunity to raise his constitutional claims. Majority op. at 121. However, any "similarity" between the two systems is at most superficial, and in any event irrelevant to the question of prejudgment.

Under the New Jersey attorney disciplinary system, a local Ethics Committee is authorized to receive complaints about attorney misconduct. It then makes an initial determination whether an attorney should be disciplined for unethical conduct. 102 S.Ct. at 2518. If the Committee determines that disciplinary action is warranted, it prepares a presentment for the Disciplinary Review Board. *Id.* at 2518-19. The Review Board then decides what disciplinary action, if any, is warranted. The New Jersey Supreme Court's *first* involvement with the proceedings is when it reviews the Review Board's decision. *Id.* at 2519.

**27.** Although the majority refers to Partington's ability to seek recusal of "*certain* members of the Supreme Court [who] may be personally biased against him ... by virtue of their finding of ineffectiveness of counsel in *State v. Clarke*," Majority op. at 127 (emphasis added), the opinion in *Clarke* shows that *all* of the justices found that Partington's assistance was ineffective. ER 158-59.

erally addressed to claims of bias in individual cases, that is, the problem of alleged bias on the part of some or all of the justices arising from the peculiar facts of an individual case or group of related cases. *Cf.* C. Wolfram, *Modern Legal Ethics* 982–99 (1986) (discussion of disqualification of judges for interest or bias contains no mention of types of bias other than individual). Rule 13 presents a very different problem than is usually addressed under recusal statutes. Under Rule 13, prejudgment is not the exceptional case, arising only under unusual circumstances. Rather, the conflict the Hawaii Supreme Court justices are confronted with in Partington's case is the *inevitable* result of the way the rule is structured. That structure ensures that prejudgment will be endemic in disciplinary cases. Far from being a random occurrence during a particular Rule 13 proceeding, prejudgment is the institutional norm.

Under Rule 13, the Hawaii Supreme Court makes the final determination in all disciplinary proceedings as to whether an attorney provided ineffective assistance of counsel. The event that triggers the Rule 13 proceedings is a determination, made in a criminal proceeding, by the supreme court or the intermediate appellate court or both that the attorney did in fact provide ineffective assistance.[28] The supreme court may have been the first court to make that determination in the criminal proceeding or it may have affirmed the finding of the intermediate court.[29] Wherever or however the determination of ineffectiveness was made in the criminal proceeding, Rule 13 vests the Hawaii Supreme Court with the authority to make the subsequent ineffectiveness determination in the disciplinary proceedings.

As already noted, the majority contends that recusal of all of the Hawaii Supreme Court justices will solve whatever bias or prejudgment problem Partington may face. However, the majority's "solution" would not apply to Partington's case only. It would require the recusal of every member of the supreme court in every case which was initiated because the supreme court had made or affirmed the triggering ineffectiveness finding. *All* such cases would be heard by judges who are not sitting members of the Hawaii Supreme Court. Such a procedure would be directly contrary to the disciplinary system the Hawaii Supreme Court actually enacted, a disciplinary system which contemplates a final determination by the supreme court in *all* cases. The majority's assertion that the recusal statute is applicable here is simply incompatible with the language and intent of Rule 13.

A Rule 13 system could easily have been devised under which the supreme court would make the determination of ineffective assistance of counsel in a disciplinary proceeding if the original finding of ineffectiveness had been made in an unappealed decision of the intermediate appellate court, and the intermediate appellate court would make the disciplinary determination if the supreme court had originated the earlier ineffective assistance finding.[30] But the Hawaii Supreme Court chose not to

---

**28.** Disciplinary proceedings are instituted whenever such a determination is made and the criminal conviction is reversed. Haw.Sup.Ct.R. 13. Conceivably, in rare instances the reversal of a conviction on the ground of ineffective assistance of counsel could originate in the trial court. However, in such cases, there is still a reasonable possibility that the determination will subsequently be affirmed (or reversed) by the intermediate appellate court, the supreme court, or both. Accordingly, there is no need to consider these cases separately, and they are subsumed within the discussion contained in the text.

**29.** Of course, where the intermediate appellate court makes the determination in the criminal proceeding and the decision is not reviewed by the supreme court, no due process issue is presented by the provisions of Rule 13.

**30.** If the intermediate appellate court had made the initial ineffectiveness finding and the Hawaii Supreme Court had affirmed, neither the supreme court justices nor the appellate court judges who participated in the criminal proceedings could be involved in the disciplinary case. However, other active appellate court judges as well as retired supreme court justices, retired appellate court judges, or active or retired circuit court judges would be eligible, if authorized by a revised Rule 13.

enact such a system. Instead, it chose to make itself the final judge of whether an attorney had provided ineffective assistance in all cases—those in which it had made or affirmed the earlier determination that the attorney was in fact ineffective as well as those in which only the intermediate appellate court had made such a determination. Rule 13 explicitly provides that the disciplinary proceeding be adjudicated by the supreme court, not by appellate court judges or retired supreme court justices. If, when it adopted Rule 13, the Hawaii Supreme Court had intended that intermediate court judges or retired supreme court justices adjudicate the disciplinary proceedings which had been initiated because of a finding made by the supreme court, it would certainly have included a provision to that effect in the text of the rule.[31]

It is clear that the Hawaii Supreme Court did not intend the recusal statute to be applicable in cases such as Partington's, because application of the statute to such cases would do precisely what the court refused to do when it enacted Rule 13. It would require that disciplinary proceedings arising out of reversals ordered by the supreme court, or out of cases in which the supreme court upheld a reversal ordered by a lower court, be adjudicated by a group of judges who are not active members of the court. The majority errs in attempting to save Rule 13 by presuming the applicability

of Hawaii's recusal statute.[32] The proper course would be to invalidate the rule and permit the Hawaii Supreme Court to reenact a version that does not offend due process.

## IV

## CONCLUSION

Certainly, judges are entitled to a presumption of absence of bias, *see Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 1669, 72 L.Ed.2d 1 (1982), as well as one of integrity and honesty. *Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464. They are also entitled to a presumption that they will follow their duty to "be unswayed by partisan interests, public clamor, or fear of criticism." Haw.S.Ct.R. 8.5(a)(5), *incorporating* Code of Judicial Conduct, Canon 3(A)(1). But such a presumption "does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." *Withrow,* 421 U.S. at 58, 95 S.Ct. at 1470. This is just such a case. Under Rule 13, the Hawaii Supreme Court would be called upon to determine whether Partington rendered ineffective assistance of counsel, despite the fact that it has previously determined, in reversing a murder conviction, that he did precisely that. While I have no doubt that the justices of the Hawaii Supreme Court would attempt to comply with

**31.** For the same reason, it would not be reasonable to suggest that the court had the recusal statute in mind when it drafted Rule 13, and that it therefore expected retired justices or active circuit judges, *see* Haw.Rev.Stat. § 602–10, to hear those disciplinary cases which result from criminal proceedings which have previously reached the supreme court level. That class of cases constitutes far too significant a part of the potential pool to have been overlooked by the court or excluded *sub silentio* from the regular procedure.

**32.** The Supreme Court has held that the ability to seek recusal is sufficient to protect due process requirements. *Kugler v. Helfant,* 421 U.S. 117, 130–31, 95 S.Ct. 1524, 1533–34, 44 L.Ed.2d 15 (1975). In *Kugler,* the Supreme Court affirmed the district court's dismissal of a complaint on the basis of *Younger,* emphasizing that recusal would solve any due process problem

that might arise from the possibility of bias on the part of individual members of the New Jersey Supreme Court. *Id.* *Kugler* involved an individual instance of bias, not the systemic bias present here. Because Rule 13 contemplates that the Hawaii justices will determine the question of ineffective assistance of counsel under that rule and not that they will all be recused from hearing such cases when the triggering determination has been made by the Hawaii Supreme Court, recusal is not an available option here. Thus, *Kugler* is inapplicable. In addition, this court has held that a plaintiff's failure to utilize state disqualification procedures will prevent us from making a determination whether his case fits the bias exception to *Younger.* *Flangas v. State Bar of Nevada,* 655 F.2d 946, 950 (9th Cir.1981). However, *Flangas,* like *Kugler,* involved an individual instance of bias to which the state recusal statute was clearly applicable.

their duty to be impartial, the risk of prejudgment on the part of the court is too great. So, too, is the price the courts would pay for failing to preserve the appearance of justice.

The majority's suggestion that Partington must now present his arguments to a tribunal that has prejudged the merits of the disciplinary proceedings because he has not shown that the tribunal is biased on the issue of whether it is biased, misconceives the law of abstention. Partington has shown all that he need show in order to obtain a federal court injunction—he has shown that the state tribunal has prejudged the merits of the disciplinary proceedings. *See Gibson,* 411 U.S. at 577–78, 93 S.Ct. at 1697. I see no legal or practical reason for forcing Partington to first present his claims to the Hawaii Supreme Court.

Although the majority posits recusal of all of the justices as a possible solution to the prejudgment problem, it offers no support for the assumption that Hawaii's general recusal statute is applicable. In fact, the structure of Rule 13 compels the conclusion that this remedy is simply not available here. Rule 13 explicitly requires that the Hawaii Supreme Court adjudicate all cases arising under the rule, not that the determination be made by an entirely different group of judges whenever the initial determination was made or affirmed by the supreme court.

For these reasons, the Hawaii Supreme Court simply cannot be said to provide Partington with an unbiased forum insofar as the disciplinary proceedings are concerned. Accordingly, *Younger* abstention is inappropriate.[33] I would reverse the district court's decision and remand the case to that court with instructions to enjoin the Rule 13 proceedings.

---

**33.** Because the Hawaii Supreme Court is biased for the reasons explained above, it is not necessary to decide whether it is also biased as to Partington's equal protection claim. Nevertheless, the April 27, 1987 letter to Partington from the Chief Justice strongly suggests that the Court has prejudged that issue as well. *See* note 11 *supra* and ER 446 (stating reasons that Rule 13

## SANCTIONS

While I agree with the majority that sanctions against Chang and Gedan are appropriate, I cannot agree that Rule 11 is a proper basis for imposing them. Certainly, Rule 11 was not the basis the Seventh Circuit relied upon in *Meeks v. Jewel Cos., Inc.,* 845 F.2d 1421, 1422 (7th Cir.1988), a case the majority cites as precedent for its sanctioning of Chang and Gedan. The Seventh Circuit has made it abundantly clear that Rule 11 does not apply to proceedings before courts of appeals. *See, e.g., Leigh v. Engle,* 858 F.2d 361, 370 n. 5 (7th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989); *Borowski v. DePuy, Inc.,* 850 F.2d 297, 306 n. 6 (7th Cir.1988); *Hays v. Sony Corp. of America,* 847 F.2d 412, 420 (7th Cir.1988).

The majority attempts to avoid this problem by stating that, unlike the Seventh Circuit, this circuit has adopted Rule 11 for proceedings before this court. However, the cases cited by the majority, *In re Mooney,* 841 F.2d 1003, 1005 (9th Cir.1988); *Rockwell International Credit Corp. v. United States Aircraft Insurance Group,* 823 F.2d 302, 304–05 (9th Cir.1987); and *In re Curl,* 803 F.2d 1004, 1007 (9th Cir.1986), when properly analyzed, do not stand for this broad proposition. Rather, in each of these cases, the objectionable conduct for which the attorney was sanctioned occurred in the district court.[34] Here, in contrast, the sanctionable conduct took place exclusively in the court of appeals: Chang and Gedan filed a frivolous motion for sanctions against Partington for bringing this appeal. I do not believe that we can properly adopt Rule 11 for appellate proceedings through the exercise of our decision making function. Rule 11 is applicable to actions taken in the district courts not the bankruptcy courts, *In re Akros Installations, Inc.,* 834 F.2d 1526, 1531 (9th Cir.1987); Fed.R.Civ.P. 81(a)(1), or the

need not be applied to prosecuting attorneys as well as to defense attorneys).

**34.** While *In re Curl* is at best ambiguous, it appears that the principal conduct the attorney was sanctioned for in that case was the filing in the district court of a frivolous notice of appeal.

courts of appeals. *Leigh; Borowski; Hays.* If a rule similar or identical to Rule 11 is to be made applicable to federal appellate courts generally, an amendment to the Federal Rules of Appellate Procedure will be required. If, on the other hand, a judge of this court believes that our court should adopt such a rule for ourselves, he should request our Advisory Committee on Rules to act. However, even if we could extend Rule 11 to appellate proceedings, it would be unwise to do so. The satellite litigation we would be inviting is not worth the candle.

Of course, this still leaves the question of what the proper basis for our imposition of sanctions against Chang and Gedan should be. While *Meeks* did not make clear what basis the Seventh Circuit relied upon to grant sanctions, there are several options available to us: Fed.R.App.P. 46(c); 28 U.S.C. § 1927; or our inherent powers. Unwarranted sanctions motions serve to multiply proceedings unnecessarily and to harass one's opponent. Because I believe that Chang and Gedan's filing of a motion for sanctions against Partington for bringing this appeal was unreasonable and vexatious, I would impose sanctions pursuant to 28 U.S.C. § 1927.

